[Civ. No. 1564. Third Appellate District.—April 22, 1918.]

## JAMES EDSON et al., etc., a Copartnership, Appellants, v. M. A. MANCEBO, Respondent.

SALE—BREACH OF WARRANTY—PROCREATVE POWERS OF STALLION—RE-COVERY OF PRICE—BURDEN OF PROOF.—In an action to recover upon promissory notes given for the payment of a stallion, which was sold under a written guaranty that he was a sixty per cent foal-getter, and that if not, the sellers would furnish another stallion upon his redelivery, it was incumbent upon the defendant, in order to defeat the action upon the theory that the guaranty contained the real agreement of the parties, to show that the horse failed to meet the procreative requirement, that he was properly cared for, and that the defendant delivered or was legally excused from delivering him to the sellers in as good condition as when sold.

ID.—RETURN OF STALLION—OFFER OF BUYER—SUFFICIENCY OF.—Under such a warranty, where the buyer, upon discovery of the lack of potency of the stallion, offered to return the animal, but the sellers refused to furnish him with another horse, such refusal relieved the buyer of an obligation to do more than to offer to make the return.

ID.—TIMELY OFFER TO RETURN.—Where such warranty was not limited to one season and the buyer, upon discovery of the lack of potency of the horse, did not make offer to return him until the early part of the next season, the offer was timely, it not being unreasonable to try him another season.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

William V. Cowan, for Appellants.

F. W. Henderson, for Respondent.

BURNETT, J.—The suit was brought to recover upon three promissory notes executed by respondent on March 5, 1913. The validity of the notes was not disputed nor was it denied that the amount claimed was unpaid. The defense was that they were given for the payment of a certain stallion purchased by respondent from appellants upon a certain guaranty that failed and thereby avoided the contract. It is not disputed that there was a written guaranty, as follows:

"If the above-named stallion should not get 60 per cent of the producing mares that are properly bred and returned for second trial at the end of the third week in foal, during the breeding season commencing April 1st, and ending August 1st, with proper care and management, we agree to find another stallion of the same size, breed, and quality upon delivery of the above-named stallion in as good condition as at present to our barn at Sacramento, California."

Another defense was that the respondent was illiterate, that he could not and did not read the contract, that appellants, through their agent, deceived respondent as to the terms of the guaranty, by reading it to him so he thought it provided that said stallion was potent to the extent of getting at least sixty per cent of the mares bred to him in foal, and, that in the event of his failing so to do, said stallion might be returned, and the notes hereinbefore mentioned canceled and returned to defendant. Respondent, therefore, asked to have the contract reformed in that respect and enforced as thus reformed. There is no dispute as to the sufficiency of the pleadings, and, therefore, the demurrer need not be considered.

A jury found a general verdict for the defendant and the court reformed the guaranty, as prayed for, and gave judgment to the defendant for his costs.

We may consider the case first upon the theory that the written guaranty contained the real agreement of the parties. In that respect, to defeat the action, it was incumbent upon the defendant to show that the horse failed to meet the procreative requirement, that he was properly cared for, and that respondent delivered or was legally excused from delivering said stallion to appellants, in as good condition as when said stallion was sold, at their barn in Sacramento. In other words, there must have been a violation of the warranty on the part of appellants and no default on the part of respondent. This, of course, the law required and the jury was so instructed.

Considering, then, the terms of the warranty, we may say that the evidence was ample to show that the horse was woefully lacking in potency. It would probably not be inappropriate to call him a "slacker." It would do no good to repeat the evidence, but it has been read with some care. Nor can it be doubted that the horse received proper care and

management, and that during all the time in controversy he remained in as good condition as when he was sold. The only remaining element relates to the duty of the defendant to redeliver the horse to the plaintiffs at Sacramento.

He did not so deliver him, but there is substantial evidence from which the reasonable inference follows that he was not in default for his omission thus to return the horse. After ascertaining that the stallion was deficient, he had a conversation with one Biggerstoff, as follows:

"I told him that horse is no good, to take that horse away and give me my notes back; take that horse; if you don't give me another horse like that, I want to make money for to pay for it. . . . I say, 'The horse is no good, Mr. Biggerstoff, you better do that.' He said, 'I am going to sell it.' . . . He said he would not give me the horse that would weigh the same as that. He would not get it; he said this is a big Belgian I got and he said, 'I cannot get another horse just like that, that weigh the same.' "

As to this, it might be stated that Biggerstoff represented appellants throughout the transaction. There is no doubt of the sufficiency of the evidence not only to show ostensible but real agency on his part. Said conversation may, therefore, be regarded as if it had taken place with the appellants themselves. The result is that upon the offer of respondent to return the horse as he had agreed, appellants declined and refused to furnish him with another horse as they had promised. The conditions being mutual and concurrent, the refusal of appellants to comply with their covenant, of course, relieved respondent of an obligation to do more than to make the offer.

Under such circumstances, offer to perform is equivalent to performance. No citation of authority is required for the support of such proposition. We may say, though, that the principle is recognized in section 1511 of the Civil Code. As to the good faith of respondent, we may add, that he attempted to sell the horse, in fact, delivering him to said Biggerstoff for that purpose upon the latter's solicitation, but the effort failed of any results, and there is evidence in the record that the horse was and is without any appreciable value.

From the showing made by respondent, we may, therefore, conclude that the consideration for the notes was lost through

the failure of the warranty without any default on the part of the respondent.

The evidence being sufficient to support the first defense of respondent, it is unnecessary to consider the second. In fact, support for the first would necessarily cover the second.

Appellants seem to think that the conclusion reached is opposed to the doctrine of the case of *Union Investment Co.* v. *F. M. Landon Co.,* 32 Cal. App. 305, [162 Pac. 903], decided by this court. Therein, it is true, that in a similar action upon a similar contract, it was held that a mere offer to return was not sufficient to entitle the vendees in an action brought against them to recover the balance of the purchase price to successfully urge the breach of the warranty as to the breeding qualities of the horse as a defense to the action. But, in that case, there was no waiver of the performance on the part of the vendees and it was very justly said: "And there could be a failure of consideration only in case the stallion failed to come up to the percentage for foal-getting provided by the warranty and the refusal or failure of the vendees to replace the stallion with another of the same breed and value."

Herein, we are justified in holding that the horse fell short of the warranty, that there was a refusal of the vendors to supply another animal as agreed, and that they waived the performance by respondent of his agreement to deliver the horse at Sacramento.

Another point made by appellants is "that the failure of the defendant to offer to return the horse within a reasonable time after August, 1913, precluded him from setting up a lack of consideration." There is evidence, however, that this offer was made in the latter part of the year 1913, or in the early part of the spring of 1914. It was timely, for two reasons: First, because it was as soon as practicable after the ascertainment of the fact as to the horse's incapacity, and, second, because the warranty was not limited to the season of 1913. Manifestly, the vendee would not be permitted to retain the horse indefinitely without offer to return him, but it would not be unreasonable to hold that he might elect to try him for another season to determine beyond question the ability of the horse to meet the situation.

Moreover, it appears from the testimony of appellants that if the offer had been made immediately after August 1, 1913,

it would have been of no avail, since it would not have been accepted and no exchange would have been made. Therefore, any delay was without prejudice to appellants.

The only other point made is that the court erred in refusing to give the following instruction: "I instruct you that the contract between the plaintiff and defendant required defendant within a reasonable time after the breeding season of 1913 to demand that plaintiff replace the stallion Socrates with another stallion. If you find from the evidence that the defendant did not within such time demand that said stallion be replaced and if you further find that said notes were not induced by fraud or misrepresentation, it is your duty to bring in a verdict in favor of the plaintiff."

But it is sufficient to say that if there was an offer, it was made within a reasonable time. In other words, there is no evidence that it was not seasonably made. Hence, the theory of the instruction in that respect was not supported by any evidence. Besides, appellants admit that they would have refused any offer made after August 1, 1913. In view of that admission, they could not claim that an offer should have been made immediately thereafter. It would have been an idle act, and, therefore, not required.

Moreover, the instruction would have submitted to the jury the issue of fraud, whereas it was reserved and determined by the court itself in accordance with the averments of the answer. It was the province of the court and not of the jury to determine that issue.

Respondent claims that the record shows that the judgment has been satisfied, and, therefore, no appeal lies. We find no such evidence in the transcript, but for the reasons stated we think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.