[Civ. No. 30652. Second Dist., Div. One. Sept. 6, 1967.]

JOHN B. BERTERO, Plaintiff and Respondent, v. NATIONAL GENERAL CORPORATION et al., Defendants and Appellants.

Hindin, Sterling, McKittrick & Powsner, Hindin, McKittrich & Powsner, Ronald M. Sohigian and Robert H. Powsner for Defendants and Appellants.

Bodkin, Breslin & Luddy, Henry G. Bodkin, Jr., and Timothy J. Sargent for Plaintiff and Respondent.

KINCAID, J. pro tem.* — Appeal is taken herein by defendants from a judgment in favor of plaintiff John B. Bertero following a trial without a jury.

Plaintiff's action is one in equity in which he sought a judgment for declaratory relief with respect to the rights and duties of himself and the defendants to three written contracts. The first, an employment contract between plaintiff and defendant National General Corporation (National), was also executed by National's principal subsidiary, defendant Fox West Coast Theatres Corporation (Fox), which was made jointly and severally liable with National for the performance of the latter's obligations thereunder. The other two agreements granted Bertero options to purchase stock of his employer, National. By his complaint plaintiff also sought a judgment for accrued salary to date of judgment.

The evidence discloses that the defendants, National and Fox, hereinafter collectively referred to as National, and the plaintiff Bertero entered into a contract of employment dated November 12, 1959, under which Bertero, National's then president, became a part-time executive of the company. The

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

contract provided that Bertero, when called upon in writing by the board of directors or the chief executive officer (president) of National, should render a limited amount of specified services, mainly of a consultative nature. Under the terms of the contract, Bertero was free to engage in other pursuits to the extent there was no interference with his obligations to National, but he expressly covenanted not to engage in activities competitive with those of National. National agreed that throughout the term of the contract it would pay Bertero a weekly salary whether or not he was called upon for services, and, in the event of his death, to pay to his widow an agreed weekly sum to the expiration date of the contract.

In 1955 the stockholders of National had adopted a restricted stock option plan in conformity with 1954 Internal Revenue Code, section 421, authorizing the issuance of restricted stock options to qualified employees. In 1957, National issued a restricted stock option to Bertero, he then serving as president of Fox. In 1958, Bertero entered into a new contract of employment to serve as chief executive officer of National. The contract provided that an additional restricted stock option should be issued to him and, accordingly, said option was issued. Each of the options is for a term of seven years, the 1957 option expiring by its terms on March 20, 1964, and the 1958 option on October 1, 1965.

The section 421 provided that to obtain the capital gain benefits of a restricted stock option the optionee must have the status of an employee at the time he exercises the option, or, in the event his employment is terminated, that the option must be exercised, if at all, within three months after the optionee ceases to be an employee. It also provided that a restricted stock option must by its very terms be not transferable and that during the optionee's lifetime it can be exercised only by him.

On March 29, 1962, some two years and four months after the execution of the part-time executive contract, the then president of National, Eugene V. Klein, sent Bertero a letter[1]

---

[1]"NATIONAL THEATRES & TELEVISION, INC.
 9570 Wilshire Boulevard, Beverly Hills, California
 CRestview 4-0411
 March 29, 1962
"Mr. John B. Bertero
453 South Spring Street
Los Angeles 13, California
"Dear Mr. Bertero:
 "The agreement dated November 12, 1959, between yourself and National Theatres & Television, Inc. has at my request recently come

notifying him that the contract was invalid and unenforceable; that he had performed no services whatever since its inception; that it only obligated National to pay for such services as National called upon him to perform, and further notifying him that it was terminated and cancelled in any event. Thereupon National wholly defaulted in the performance of its obligations under the contractual arrangements. Neither National's nor Fox's board of directors had authorized Klein to repudiate or terminate the contract.

Bertero then commenced this action for declaratory relief. He alleged the contractual arrangements, performance by him to the time of National's default, and the claims of National as known to him in the letter of termination. He prayed for a decree declaring the validity of the contract and options. He also asked for a declaration that any failure or refusal by National to call upon him for services does not "affect his rights and status as an employee" under the contract and options. Bertero also asked for a judgment for accrued unpaid salary to the date of judgment. Bertero did not seek a decree directing National to specifically or otherwise perform the contract subsequent to the decree requested by him or which would prevent National from breaching the contract or options subsequent to the rendition of the requested decree.

---

under close scrutiny and review. The considered conclusion is that it represents a serious detriment to and drain upon the company and that the interests of the company and its shareholders require its immediate termination.

"The circumstances under which it was entered into render it invalid and unenforceable. Moreover, it can only be construed as an agreement to pay you for such services as you may be called upon to perform. To construe it otherwise would compound its invalidity.

"The company, reviewing its business and operations and the absence of any participation therein or services performed by you for the company since November 1959, has determined that there is no need for your services either at the rate set forth in the purported agreement or at all. Moreover, the company has determined that in any event the agreement is invalid, unenforceable and an imposition upon the company and its shareholders.

"Accordingly, you are hereby given notice that the company shall not call upon you to perform any services for it or on its behalf, and that, therefore, you shall be entitled to no further compensation thereunder. You are further notified hereby that in any event the company hereby terminates and cancels such agreement.

 "Very truly yours,
 NATIONAL GENERAL CORPORATION
 (formerly National Theatres & Television, Inc.)
 By EUGENE V. KLEIN,
 Eugene V. Klein, President
"cc: Mr. Alan May
 Mr. Laurence A. Peters"

National, in its answer and amendment thereto, asked for a declaration that the contract is invalid and unenforceable; that it had been lawfully terminated and cancelled on March 29, 1962, and Bertero lawfully discharged and removed from office on that date, and for a further declaration that his stock options expired three months after said date. Concurrently with the filing of an answer and amendment in 1963, National filed a cross-complaint to recover all payments made to Bertero under the contract.

At the trial it was Bertero's contention that National's purported termination of the contractual arrangements on the ground of invalidity and on the ground that he had performed no services, was made wrongfully and in bad faith, for the purpose of destroying his status as an "employee" under the restricted stock options and Internal Revenue Code, section 421, and for the further purpose of achieving a position of unconscionable advantage so as to compel him to compromise his rights under his employment contract. That an action for damages for breach of contract would necessarily recognize that the contract was at an end; that Bertero's status as an employee had terminated upon the breach, and that, unless he exercised the options within three months after the breach, they were extinguished, despite the fact that each of them had a term of several more years to run. Plaintiff contended equity could and should thwart the attempted wrong of National and (1) declare the 1959 agreement and options to be valid and subsisting; (2) declare that any failure to call upon Bertero for services did not affect his rights and status as an employee under the employment contract and option; (3) grant him a judgment for accrued salary, and (4) retain jurisdiction to settle any future dispute between the parties.

National contended that the employment agreement was invalid and unenforceable because it had been obtained by duress and undue influence and lacked consideration. It further contended that when the agreement was made Bertero acted in a fiduciary capacity; that he obtained an advantage thereby, and that under Civil Code, section 2235, it is presumed that it was entered into by National under undue influence. National also contended that Bertero had breached the agreement in many respects and its termination for breaches was lawful. National took the further position that even if it had wrongfully terminated the agreement, neverthe-

less Bertero's options had expired three months thereafter, he not having exercised them within said period.

National also argued at the trial that even if its purported termination of the contractual arrangements was wrongful, a court of equity had no power to declare the contracts to be valid and subsisting at the date of its decree and that its liability for the wrong committed had to be liquidated in a judgment for damages for breach of contract.

Following oral rendition of judgment by the court in favor of plaintiff and against defendants on the foregoing issues, plaintiff submitted findings of fact and a form of proposed judgment declaring the 1959 agreement and the options to be "valid, subsisting and enforceable." The proposed judgment did not order performance by National or Bertero subsequent to rendition of the decree but retained jurisdiction to interpret and enforce the judgment by such further orders as might be necessary, should further disputes arise. As to the stock options, the proposed judgment gave National the choice of either stipulating that they should be extended so that Bertero should be accorded the benefit of a full seven-year term as to each, or of paying damages for their breach in the amount found by the trial court.

At the hearing on objections of defendants to the proposed findings and judgment, defendants' counsel, among other things, objected to inclusion of the words "subsisting and enforceable" as related to the 1959 employment agreement and the option agreements. He insisted, over protestations of plaintiff's attorney, that the words "and the parties are ordered to perform thereunder" be inserted in both the findings and judgment following the finding that the 1959 agreement and the 1958 option is a "valid, subsisting and enforceable agreement." The court acceded and the additional words were interlineated in both the findings and the judgment.

In addition to declaring that the 1959 agreement, and the two options, are valid, subsisting and enforceable agreements, the judgment further declares that any failure or refusal of National to call upon Bertero for services "does not affect his rights and status" under the agreement or options. It also orders National to extend each of the options so that Bertero shall have a full seven-year term in respect of each. Alternatively, National, at its option, can pay damages as found in the sum of $302 724.17, with interest from date of judgment. The judgment additionally awards Bertero accrued and unpaid salary from the time of National's default to the date

of judgment on August 20, 1964, in the sum of $140,025.48, prejudgment interest of $17,903.56, court costs, and determines the issues presented by the cross-complaint in his favor.

National appealed from the whole of the judgment. However, on this appeal, it appears to have abandoned its position in the trial court that the agreement was invalid from its inception; that it terminated the agreement by its decision not to call upon Bertero for further services, and that it is entitled, by cross-complaint, to a recovery of all the weekly salary paid to Bertero from December 1, 1959, to and including March 29, 1962. To the contrary, it now affirms that the agreement was in effect to March 29, 1962, but contends the evidence shows that on that date it rightfully terminated the agreement because of material breaches by Bertero. It also contends that the stock options were in full force and effect to June 29, 1962, and that they then expired by their terms, Bertero's status as an employee having terminated on March 29, 1962, and he not having exercised the option within the period of three months from the termination of his employment. National further contends that if its repudiation of the agreement and its options was wrongful, the judgment is not supported by the findings.

A primary ground of appeal herein is the repeated assertion that the judgment is one for specific performance of the November 12, 1959, employment contract; that equity will not specifically enforce an employment contract for personal services and that plaintiff is precluded from equitable relief because he had an adequate remedy at law for damages on breach of contract. The same argument is made by defendants as to the stock options on the contention that they were part and parcel of Bertero's employment contract and were in compensation for his continuing rendition of personal services.

In support of their position defendants cite Civil Code section 3390 which provides: "The following obligations cannot be specifically enforced: (1) An obligation to render personal service; (2) An obligation to employ another in personal service . . ."; also, *Poultry Producers of Southern Cal., Inc.* v. *Barlow,* 189 Cal. 278, 288 [208 P. 93], interpreting the foregoing section of the Civil Code to the effect that "a contract for *service* will not be specifically enforced, either directly by means of a decree directing the defendant to perform it, or indirectly by an injunction restraining him

from violating it. Especially is this the rule where the relation between the parties to the contract is one of mutual confidence, and the contract stipulates for acts that require special knowledge, skill or ability, or the exercise of judgment, discretion, integrity and like personal qualities.''

Defendants argue that it is obvious from the terms of the judgment itself that it orders specific performance of the 1959 employment contract because, after holding that such contract is ''a valid, subsisting and enforceable agreement,'' the trial court added the words ''and the parties are ordered to perform thereunder.'' Defendants urge that specific performance is further indicated by the final paragraph of the judgment stating: ''Jurisdiction of this cause is hereby reserved and retained for the purpose of interpreting and enforcing the provisions of this Judgment and for the purpose of making such further orders as may be necessary to determine any disputes which may hereafter arise under the terms of the Employment and Stock Option Agreements hereinbefore referred to.''

We are unable to agree with defendants that the mere insertion of the words ''and the parties are ordered to perform thereunder'' in the findings and judgment, or the final quoted paragraph, necessarily convert the judgment to one for specific performance rather than for declaratory relief, or that plaintiff is precluded from seeking equitable relief by way of declaratory judgment.

The entire case was filed and tried on the theory that the action was one for declaratory relief. The complaint is so captioned and the prayer is for a judgment declaring the rights of the parties. The joint statement of matters agreed upon for regular pretrial hearing and the pretrial order state this ''is an action for declaratory relief.''

The subject matter of this action is appropriate for application of section 1060, Code of Civil Procedure, providing for declaratory relief in behalf of the parties herein. Plaintiff was a person interested under a contract. He desired a declaration of his rights or duties with respect to another. He and that other had an actual controversy with respect to those rights and duties. He had the privilege of asking for a declaration of rights or duties alone or with other relief.

The mere existence of other remedies, including one for damages for breach of contract, did not bar the trial court herein from making a declaration in this case. As stated in *Ermolieff* v. *R.K.O. Radio Pictures, Inc.,* 19 Cal.2d 543, 547

[122 P.2d 3] : "It is clear . . . that declaratory relief may be asked for alone or with other relief, that the court may make a binding declaration of rights whether or not other relief *is or could be* claimed at the time, and that the remedy is cumulative, that the mere fact that the contract has already been breached and a cause of action therefor (one of the traditional remedies) has accrued, does not necessarily deprive the court of the power to grant declaratory relief under the law. Neither the fact that a party has another remedy nor that a breach has occurred prior to the commencement of his action compels the court to deny relief. Ordinarily, the alternative remedy, such as damages, injunctive relief and the like would be more harsh, and if he chooses the milder remedy, declaratory relief, the court is not required for that reason to compel him to seek a more stringent one. . . ." (See *Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719, 731, 733 [146 P.2d 673, 151 A.L.R. 1062].)

"The fact that the oral contract may be one of employment, involving personal services and hence not specifically enforceable (Civ. Code, § 3390; *Poultry Producers of Southern Cal., Inc.* v. *Barlow*, 189 Cal. 278 [208 P. 93]), does not necessarily render declaratory relief improper or unnecessary. This is merely a factor to be considered by the trial court in determining what declaration would be appropriate. (*Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 774 [128 P.2d 665]; *Blakeslee* v. *Wilson*, 190 Cal. 479 [213 P. 495]; *Coykendall* v. *Jackson*, 17 Cal.App.2d 729 [62 P.2d 746].)

"That a cause of action otherwise may have accrued and that other adequate relief may be available to plaintiff at the time are also factors to be considered by the court. The remedies provided by the statute are cumulative and declaratory relief may be asked alone or with other relief (Code Civ. Proc., §§ 1060-1062). Hence a plaintiff's right to proceed is not barred by the fact that the contract sued upon may have already been breached and that traditional or statutory (see Civ. Code, § 3423(5); Code Civ. Proc., § 526) alternative remedies are available. . . ." (*Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753, 760, 761 [161 P.2d 217, 162 A.L.R. 747].)

The declaration in the judgment that the agreement between the parties of November 12, 1959, and the stock options of 1957 and 1958 are valid, subsisting and enforceable agreements and the retention of jurisdiction by the court for

the purpose of interpreting and enforcing the provisions of the judgment are properly within the scope of relief available in an action for declaratory relief. (*Del Riccio* v. *Photochart*, 124 Cal.App.2d 301, 307, 308, 316 [268 P.2d 814].)

Defendants further argue that the judgment holding the employment agreement to be valid, subsisting and enforceable and the retaining by the court of jurisdiction to make further necessary orders as to disputes arising thereunder, results in one for specific performance of the contract and options yoking the parties together in a personal service contract, the terms of which both are ordered to perform, although it is clear that defendants have done everything in their power to repudiate and terminate it. These objections are fully answered by our Supreme Court in *Universal Sales Corp.* v. *California etc. Mfg. Co.* (20 Cal.2d 751 [128 P.2d 665]). There the defendant had invented a special type of press (a cuber press) and had agreed to sell it to plaintiff for $2,000 in return for plaintiff's promise to use his best efforts to foster the sales of the product and to give plaintiff 20 percent of the gross receipts derived from such sales. Plaintiff claimed a breach by defendant and sued for a declaration of the parties' rights under the contract. The court said (pp. 773-775):

'The defendant next contends that the terms of the judgment are so broad as to amount to a decree of specific performance rather than a declaration of the rights and duties of the parties under the contract. Particular objection is made to the recognition accorded the plaintiff's claim to the royalty payments and patent interests stipulated in the agreement. The defendant urges that such adjudication, operating *in futuro* and contemplating the continuance of a personalized relationship between the parties for the stated time, contravenes the settled principle of equity that a contract for personal services extending over a long period will not be specifically enforced. (Civ. Code, § 3390; *Poultry Producers of Southern Cal., Inc.* v. *Barlow*, 189 Cal. 278 [208 P. 93].) But the defendant mistakes the scope of the judgment rendered under the authority of the declaratory relief act of this state. Code of Civil Procedure, sections 1060-1062a. (*Blakeslee* v. *Wilson*, 190 Cal. 479 [213 P. 495].) The present case, involving an *actual* controversy between the parties, is the precise type of situation that the statutory remedy in question was designed to meet and accommodate. The judgment simply declares the rights and duties of the parties under the terms

of the contract and limits the money award in favor of the plaintiff to the sum to which it was entitled as of the date of the hearing on the supplemental complaint in 1935. The fact that considerations of personal service are involved in the contract does not render the agreement an improper subject for declaratory relief (*Blakeslee* v. *Wilson, supra*; *Lane Mortgage Co.* v. *Crenshaw*, 93 Cal.App. 411 [269 P. 672]; *Herrlein* v. *Tocchini*, 128 Cal.App. 612 [18 P.2d 73]) *Holley* v. *Hunt*, 13 Cal.App.2d 335 [56 P.2d 1240]) nor establish that such suit is governed by the rules relating to actions for specific performance. (*Lane Mortgage Co.* v. *Crenshaw, supra*, at p. 433.) The defendant's citation of *Coykendall* v. *Jackson*, 17 Cal.App.2d 729 [62 P.2d 746], does not strengthen its argument. That case merely decided that the trial court did not abuse its discretion in sustaining without leave to amend a demurrer to the plaintiff's complaint for declaratory relief. Consistent with the precise limitations of the question there presented for consideration, it is manifest that any language of that opinion purporting to intimate that a contract involving personal services because not specifically enforceable is likewise not a proper matter for declaratory relief is dictum and not controlling of the point here involved in view of the well-settled law on the subject of this statutory remedy, as above noted. It follows therefore that the trial court's treatment of the present case as one correctly brought under section 1060 of the Code of Civil Procedure and the form of its judgment determinative of the points in litigation are unassailable.''

█ The criticized words, inserted in the findings and judgment at the instance of defendants, ''and the parties are ordered to perform thereunder,'' are unnecessary and surplusage to the intent and effect of the judgment. Standing alone they certainly do not convert the judgment into one for specific performance of an employment contract from one for declaratory relief. Furthermore, since the above quoted words were added to the findings and judgment at the express request of defendants, they may not now be heard to challenge their effect on appeal. (*Snow Mountain Water & Power Co.* v. *Kraner*, 191 Cal. 312, 325 [216 P. 589]; *Jentick* v. *Pacific Gas & Elec. Co.*, 18 Cal.2d 117, 121 [114 P.2d 343]; *Evans Lbr. Co.* v. *Schaecher*, 178 Cal.App.2d 307, 309 [2 Cal.Rptr. 904].)

█ In continuing to insist that the cause of action alleged by plaintiff in his complaint and the judgment as rendered by

the court are for specific performance of the employment contract rather than for declaratory relief, defendants further assert the court failed to include necessary findings that such contract was just and reasonable or that it was made for adequate consideration. We find no merit to these contentions.

The court on conflicting but substantial evidence specifically found:

"Considering (a) the size and importance of the business of NATIONAL and its subsidiaries, (b) the experience, knowledge and competency of plaintiff in respect of the affairs of NATIONAL and its subsidiaries, (e) the value to NATIONAL of the right to call upon plaintiff for the services provided for in the 1959 Agreement, (d) the value to NATIONAL and its subsidiaries of plaintiff's covenant not to compete as set forth in the 1959 Agreement, (e) other employment contracts entered into by NATIONAL or its subsidiaries, (f) the compensation of other executives of NATIONAL and its subsidiaries, and (g) all the other circumstances existing at the time of the execution of the 1959 Agreement, the 1959 Agreement was, and it is, equitable, just and fair to each of the parties thereto.

"The consideration to NATIONAL and FOX WEST COAST, and each of them, for the 1959 Agreement was and is just, fair, sufficient and adequate."

The court further found that the 1959 agreement was arrived at by fair, open, and arms-length negotiation; in approving the agreement, defendants acted with full knowledge of all material facts; the members of each defendant's board of directors exercised a bona fide business judgment in approving the agreement; the consent of each defendant to the agreement and to its execution was real, free, and voluntarily given, and each defendant was represented by counsel, but plaintiff acted on his own behalf without independent counsel; for a period of two and one-quarter years, from November 12, 1959, to March 29, 1962, the defendants had full knowledge of all material facts relating to the terms of the agreement and to the nature of their approval of such agreement; for the same period the defendants voluntarily accepted the benefit of the agreement with full knowledge of all facts relating to its execution; Bertero performed all of his obligations up to March 29, 1962, under the 1959 agreement and option agreements, and rendered numerous services thereunder of substantial value to National.

Use of the words "equitable, just and fair" as applied to the 1959 agreement, together with the other quoted verbiage,

connotes a like finding that the agreement was reasonable as to each of the parties. Webster's New International Dictionary, second edition, gives as synonyms for reasonable—equitable, fair, and just. Black's Law Dictionary, third edition, interprets reasonable to mean fair, just, equitable, evenhanded, equal as between conflicting interests.

The findings of the court as to adequate consideration of the 1959 agreement of the parties, in addition to those quoted, are that the consideration to both defendants was just, fair, sufficient and adequate; there was good, sufficient and adequate consideration for the execution of the 1959 agreement by defendants. These findings clearly and properly determine that the agreement was made with adequate consideration.

Defendants' next ground for appeal is the claim of error in finding for and awarding plaintiff relief with respect to the two stock option agreements. Plaintiff asserts and we agree that the action of the court in this regard reflects an appropriate exercise of its equitable powers in the light of the evidence herein.

It is clear that the stock option agreements are a part of the 1959 employment agreement. As part of the terms thereof defendants expressly acknowledged both the 1957 and 1958 stock option agreements and agreed to maintain them in full force and effect.

The court having properly held that the purported termination of the 1959 employment agreement was invalid and that it, together with the two stock option agreements, are valid, subsisting and enforceable agreements, plaintiff is entitled to continue in the same relationship to those stock options as he enjoyed prior to the attempted termination letter of March 29, 1962.

The two option agreements granted plaintiff by defendants are restricted in nature in conformity with the 1954 Internal Revenue Code, section 421, and qualify for special tax treatment.

The employee receiving such option realizes no income either at the time the option is granted him or at the time the option is exercised by him, provided that the stock is not sold within six months after the exercise. Income is only recognized when the employee sells or disposes of the stock he has acquired by virtue of exercising the option. Additionally, the employee, in order to qualify for the advantageous capital gains treatment, may not sell the stock within two years of

the date on which the option was granted. (Under the 1964 code, the two-year period was extended to three years.) Finally, the option must be exercised while the option holder has the status of an employee. It is obvious why, in order to gain the financial advantages intended by the option agreements, plaintiff was concerned with maintaining his status as an employee.

Stock options of the nature here granted plaintiff may be construed as additional compensation to the employee by the employer and the court found that those here granted were so intended. They not only serve as an added reward for valuable service to be rendered, but encourage increased effort on the part of the employee to achieve added profits and consequent higher market value of the corporate stock. They also may tend to extend the length and improve the character of employee-employer relationship.

The unique value to the employee is that when the market price of the optioned stock surpasses the option or "exercise" price, he can buy at the lower figure for a virtually certain profitable investment with included tax advantages. Bertero was entitled to seek to secure his right to that value.

Almost all of Bertero's working life had been in the service of Fox and National. He had been a member of the board of directors of the former for 25 years and of the latter since its incorporation. He had been president of both organizations. By virtue of the stock options, Bertero was given the unique opportunity to profit by National's successes. His action for declaratory relief sought a determination that the defendants could not, by their wrongful act, deprive him of that opportunity.

The court found that the options like those issued to plaintiff are unique, not obtainable by purchase in the market, and their value is difficult to ascertain.

It further found as follows:

"The plaintiff has fully complied at all times with his covenant not to compete contained in the 1959 Agreement. He now is, and at all times has been, ready, able and willing to perform all his obligations under the 1959 Agreement.

"One of the purposes of such breach was to put the plaintiff in a position of disadvantage and detriment by limiting him, in the enforcement of his rights, to the recovery from the defendants of a lump sum judgment for damages, for breach of the 1959 Agreement, the 1957 Option, and the 1958 Option. At the time of such breach, the defendants knew that under

the provisions of the United States Internal Revenue Code, any damages recovered by the plaintiff and attributable to future periods of the 1959 Agreement, and for breach of the 1957 Option and the 1958 Option, would be taxable in the year recovered as ordinary income or compensation to the plaintiff. The defendants wilfully intended by such breach to deprive the plaintiff of, or to destroy, his contract rights under the 1957 Option and the 1958 Option and to put themselves in an unconscionable position of advantage over the plaintiff so as to compel him to accede to a revision of the 1959 Agreement upon terms satisfactory to the defendants and in derogation of the rights of the plaintiff.

"Unless the 1957 and 1958 Options are extended by defendants in conformity with the provisions of the Judgment herein, plaintiff has been damaged by NATIONAL's breach of the 1957 option in the sum of $65,203.53 and by its breach of the 1958 Option in the sum of $237,520.64 or in the total sum of $302.724.17."

"The 1957 Stock Option Agreement between plaintiff and NATIONAL remained in full force and effect until its expiration on March 20, 1964. The 1958 Stock Option Agreement remains in full force and effect. Both said Agreements were breached by defendants on March 29, 1962."

As conclusions of law relating to the stock options, the court found:

"NATIONAL's Stock Option Plan expressly provides that nothing contained therein or in any stock option agreement issued thereunder shall affect the contractual rights of an employee. Accordingly, the 1959 Agreement governs the true interpretation of the provisions of the 1957 Option and the 1958 Option, each of which was issued to the plaintiff under other circumstances and when he was a full time employee. The Court must so construe the documents as to avoid a forfeiture of the plaintiff's rights, if such a construction is reasonably possible. Interpreted together, the 1959 Agreement, the 1957 Option and the 1958 Option do not give NATIONAL any right, without cause, to terminate said Options or either of them.

"The terms and provisions of the 1959 Agreement prevail over the By-laws of NATIONAL. . . . There is no provision in said By-laws entitling NATIONAL to breach the 1959 Agreement and thereby to terminate, without cause, the 1957 Option and the 1958 Option.

"Justice and equity require that NATIONAL extend the term

of each of said Options so that the attempted wrong of the defendants will be thwarted and the plaintiff will have the full benefit of his bargain. By such extension, no penalty will thereby be imposed upon NATIONAL. If the plaintiff exercises his said Options, or either of them, NATIONAL will receive the agreed purchase price for the shares it issues, and in doing so, will do exactly what it agreed to do, and no more.

"The plaintiff is entitled to a declaration of his rights and to a Judgment declaring as follows: (a) The 1959 Agreement is a valid, subsisting and enforceable agreement and the parties are ordered to perform thereunder. (b) The plaintiff has fully performed all his obligations under the 1959 Agreement to the date hereof. (c) Under the terms of the 1959 Agreement, any failure of NATIONAL to call upon the plaintiff for services does not affect the plaintiff's rights and status under the Agreement or his rights under the 1957 Option or the 1958 Option. (d) The 1957 Option was a valid, subsisting and enforceable agreement until the stated term thereof expired during the pendency of this action on March 20, 1964. (e) The 1958 Option is a valid, subsisting, and enforceable agreement and the parties are ordered to perform thereunder.

'The plaintiff is entitled to further relief and to a Judgment against defendant NATIONAL providing that unless NATIONAL shall file in this cause, within ten (10) days after the Judgment herein becomes final, its Stipulation and Election in the form provided for in the judgment, whereby defendant agrees that the stated term of the 1957 and 1958 Stock Option Agreements are to be measured in accordance with the provisions of said Stipulation, plaintiff shall have a money Judgment against defendant NATIONAL in the sum of $302,724.71 [sic] with interest thereon from the date of Judgment herein.''

The foregoing findings and conclusions of law were included in and made a part of the judgment and find full support in the evidence herein.

Complaint is made by defendants of that portion of the judgment providing that unless defendants, within 10 days after the judgment becomes final, agree that the stated term of the two stock option agreements shall be measured in accordance with the provisions of the stipulation and election agreement, exhibit ''A'' as annexed to the judgment, plaintiff have and recover the stated amount as damages.

The stipulation and election agreement, exhibit "A" is as follows:

"The undersigned, NATIONAL GENERAL CORPORATION, hereby stipulates, elects and agrees with the plaintiff as follows:

"A. Reference is made to that certain Stock Option Agreement dated March 21, 1957 between NATIONAL GENERAL CORPORATION (executed by it under its then corporate name of National Theatres, Inc.) and JOHN B. BERTERO, wherein it is provided in paragraph 1(c) as follows: 'The Option shall expire and all rights to purchase shares hereunder shall cease seven years from the date hereof (unless the Option expires prior thereto as hereinafter provided).'

"The undersigned agrees that there shall not be included in said seven-year period the interval of 781 days commencing March 29, 1962 and expiring March 20, 1964 and that plaintiff shall have a further period of 781 days, within which to exercise said option, from and after the date the Judgment herein becomes final, any other provision of said Agreement to the contrary notwithstanding.

"B. Reference is made to that certain Stock Option Agreement dated October 2, 1958 between NATIONAL GENERAL CORPORATION (executed by it under its then corporate name of National Theatres, Inc.) and JOHN B. BERTERO, wherein it is provided in paragraph 1(c) as follows: 'The Option shall expire and all rights to purchase shares hereunder shall cease seven years from the date hereof (unless the Option expires prior thereto as hereinafter provided).'

"The undersigned agrees that there shall not be included in said seven-year period the interval between March 29, 1962 and the date the Judgment herein becomes final or the interval between March 29, 1962 and October 1, 1965, whichever is shorter, and that plaintiff shall have a further period, equal to the shorter of said intervals, from and after the date of Judgment herein becomes final in which to exercise said Option, any other provision of said Agreement to the contrary notwithstanding.

"NATIONAL GENERAL CORPORATION

"By ————.''

■ By its judgment, as a court of equity, defendants are given the privilege of reinstating in full effect those stock options owned by plaintiff prior to the attempted termination thereof of March 29, 1962, without prejudice or penalty to plaintiff for the intervening lost periods. The court having properly held these stock option agreements to be valid,

subsisting and enforceable, plaintiff is entitled to the full and complete benefit thereof through the court's judgment.

Defendants object to the alternative provision for damages in event they refuse to execute and file the stipulation and election. exhibit "A." They contend that this aspect of the judgment is one for money damages; that damages were never prayed for or became an issue.

Firstly, the alternative of damages in the judgment need not necessarily concern defendants since they may be completedly obviated by defendants' execution and filing of exhibit "A."

Defendants, having at all times taken the position that the employment agreement and stock options were repudiated and terminated, and that plaintiff's sole remedy therefor was by way of recovery of a judgment for damages, cannot now successfully be heard to complain of the alternative portion of the court's equitable judgment providing for damages.

As said in *Bisno* v. *Sax*, 175 Cal.App.2d 714, 728, 729 [346 P.2d 814] : "California recognizes that : 'Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.' (*Times-Mirror Co.* v. *Superior Court*, 3 Cal.2d 309, 331 [44 P.2d 547].) In the same spirit it is said in *Wuest* v. *Wuest*, 53 Cal.App.2d 339, 346 [127 P.2d 934] : 'Living as we do in a world of change, equitable remedies have necessarily and steadily been expanded to meet increasing complexities of such changing times, and no inflexible rule has been permitted to circumscribe the power of equity to do justice. As has been well said, equity has contrived its remedies "so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated," and "has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirement of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrong are constantly committed." (1 Pom.Eq.Jur., 4th ed., p. 125, § 111.)' . . .

"Equity having taken jurisdiction over a cause does complete justice, even to the extent of exceeding the specific prayers of the complaint when necessary. *Petersen* v. *Ridnour*, 135 Cal.App.2d 720, 727 [287 P.2d 848] : 'It is fundamental that equity, having taken jurisdiction, will grant

complete relief. This is especially true in a declaratory judgment action. "If a controversy exists as in this proceeding and a complaining party is entitled to some relief a trial court may not refuse to declare the rights of the parties concerning the controversy. [Citation.] The purpose of the action is to set at rest or at least quiet, until the occurrence of further events, the rights and relations of the parties. [Citations]' [*sic*] '[T]he absence of a prayer is not fatal, the court being charged under section 580, Code of Civil Procedure with the duty in a contested case of granting any relief consistent with the case made by the complaint and embraced within the issue.' "

The judgment ordering the extension of the term of the stock options with a choice to the defendants to pay damages in lieu of any such extension achieves a "fair result" in an aggravated situation (*Farina* v. *Bevilacqua,* 192 Cal.App.2d 681, 685 [13 Cal.Rptr. 791]) and is justified under the broad equity powers vested in the trial court. (*Holibaugh* v. *Stokes,* 192 Cal.App.2d 564, 570 [13 Cal.Rptr. 528]; see *Carruth* v. *City of Madera,* 233 Cal.App.2d 688, 701 [43 Cal.Rptr. 855].)

Since the attempted wrongful termination by defendants of their employment agreement with plaintiff was invalid and the agreement continued in full force and effect, there was no requirement upon the part of plaintiff to exercise his options under the option agreements before the "expiration of three months next following the date of the termination of the employment of the Optionee with the company. . . ." (*Pierce* v. *Lukens,* 144 Cal. 397, 401 [77 P. 996].)

In *Ray Thomas, Inc.* v. *Cowan* (99 Cal.App. 140, 145 [277 P. 1086]), an option contract case, the court held: "As to the . . . objection that the option to purchase was not exercised within the time limit, it is sufficient to say that the record shows beyond controversy that the act of the appellant prevented the service upon her of written notice of acceptance of the option within the time limit, and brings this case clearly within the rule set forth in 13 C.J., page 647, section 721, which is: 'A party to a contract cannot take advantage of his own act or omission, to escape liability thereon. . . . Under this rule performance of a contract is excused when it is prevented by the acts of the opposite party, or is rendered impossible by him.' . . ."

In *Kaneko* v. *Okuda,* 195 Cal.App.2d 217, 234 [15 Cal.Rptr. 792], a stock option case, the court said: ". . . The repudiation of a contract by one party prior to the date performance

by the other is due excuses the other from tendering performance. (12 Cal.Jur.2d, § 217, p. 438.) Defendants cannot claim that acceptance of the option should have been made 'on or about 180 days' from the execution of the contract. (*Edson* v. *Mancebo*, 37 Cal.App. 22, 24 [173 P. 484].) ''

The employment agreement continued in full force and effect and defendants cannot, by their own wrongful act, deprive Bertero of that which he had bargained for: the opportunity to share in the successes of National over a specified period of time. The obvious and equitable remedy is to regard the term of the option contracts as suspended from March 29, 1962.

The courts have recognized their right to extend the terms of a stock option contract, or to regard the terms as extended. In *Citron* v. *Franklin*, 23 Cal.2d 47, 57 [142 P.2d 16], the court found that the specified term of one year within which to exercise an option to purchase stock should be extended to a time fixed by the court, where the failure to exercise within the prescribed period was caused by the wrongful acts of the defendant.

As a court of equity the court, under the evidence herein, properly ordered the extension of the term of the stock options with a choice to the defendants to pay damages in lieu of such extension.

Defendants now say there is insufficient evidence to support the alternative award for money damages with respect to the stock options. At the trial defendants took the position that the only relief, if any, to which plaintiff might be entitled, was by way of damages for breach of the option agreements, and presented evidence to show that ascertainment of damages was possible.

A court of equity is empowered, under appropriate conditions, to award damages along with declaratory relief. (Code Civ. Proc., § 1060.) In *Record etc. Co.* v. *Pageman Hold. Corp.*, 42 Cal.2d 227 [266 P.2d 1], declaratory relief and damages were sought under a contract relating to certain property and patents. The trial court declared, among other holdings, that the questions of recovery of the purchase price by defendant as well as plaintiff's right to damages were preserved and the court retained jurisdiction to do so. Our Supreme Court held that the trial court should have completed the determination of the controversy to avoid further litigation. In revising the judgment the trial court was directed to render the same judgment before given but with

the addition of including a determination of the foregoing matters. The court further stated (p. 234): "The trial court has discretion as to the extent of the relief to be afforded in a proceeding for declaratory relief (5 Cal.Jur. 10-Yr.Supp. [1944 Rev.], Declaratory Relief, § 22 et seq.), but where a case is made for such relief the court should not deny it. (*Lord* v. *Garland,* 27 Cal.2d 840 [168 P.2d 5].)"

Plaintiff called an expert on economics and finance, Dr. Kenneth Trefftzs, who testified that the stock options could not be valued. Defendants undertook extensive cross-examination of Dr. Trefftzs seeking his admission that the stock options could be valued.

Plaintiff had sought a declaration that stock options were existing and an order that their terms be extended. Defendants claimed damages to be his only remedy, and attempted to show that damages were capable of ascertainment.

The cross-examination of Dr. Trefftzs was aimed at establishing that criteria in fact exist whereby Bertero's loss by wrongful deprivation of the option rights granted him under the 1959 agreement might be measured.

The evidence disclosed that National had issued outstanding warrants which amounted to options to purchase one-quarter share of National's stock at a price of $13.50 (for a full share) for the period ending March 1, 1965 and $15.50 (for a full share) for the subsequent two-year period. These quarter-share warrants were actively traded.

Defendants' counsel attempted to elicit evidence from the plaintiff's witness that National's outstanding quarter-share warrants have a value in the market place and that, from the data pertaining to these warrants, evidence could be developed from which the value of the options could be determined. Not only did the defendants by cross-examination of Dr. Trefftzs inject into the trial the contention that the value of the options could be determined, but they followed through in support of their contention by calling their own expert, Hans Mattes, a supervising Deputy Commissioner of Corporations of the State of California, for the sole purpose of eliciting from him evidence concerning the criteria by which the valuation could be made.

The defendants introduced in evidence the daily quotations of the New York Stock Exchange of National's common stock for the period ended on September 30, 1964. This evidence of the closing prices of National's common stock subsequent to the date of the filing of the complaint was offered evidently to

buttress their trial position that the court should consider evidence of values subsequent to March 29, 1962, in making its findings and judgment.

The court had before it National's financial statements, its post-effective amendments filed with the Security Exchange Commission, the New York Stock Exchange closing prices of the common stock, and the testimony of defendants' witness, Hans Mattes, as well as that elicited on the cross-examination of Dr. Trefftzs.

National's proffered evidence shows that on March 19, 1963, the market price of National's stock was $10.625 and that its quarter-share warrants were $.73 Bid and $.78 asked; that the exercise price of the warrants for a full share was $13.50 for the two-year period ending March 1, 1965 and $15.50 for the subsequent two-year period.

It further appears from defendants' proffered evidence that a warrant purchaser would pay $3.00 (four quarter-share warrants at an average price of $.75 each) for the right to purchase one share. If such a purchaser exercised his option at any time prior to March 1, 1965, his cost per share would be $16.50 ($3.00 for warrants plus $13.50 exercise price). On the other hand, if the plaintiff concurrently exercised his 1957 option his cost would be $7.36 per share or $9.14 less than the warrant holder's cost per share. If this cost difference is taken as some measure of the value per share of the 1957 option, as compared with the prevailing market price and exercise price of the warrants, then the value of the 1957 option is $69,226.36. On the same basis the cost difference per share in respect to the 1958 option is $8.38 and the total value of that option is $243,580.48. The aggregate value of the two options is $312,806.84, thus closely approximating the court's finding of monetary damages in the amount of $302,724.17.

Further evidence presented by defendants through their expert Mr. Mattes, was that, as a rule of thumb, the Corporation Commissioner will approve a five-year stock option to a securities broker at an exercise price of 110 percent of issue or market price for the first three years of the term of the option, 115 percent for the fourth year, and 120 percent for the last year. Mr. Mattes testified that for compensation purposes (*i.c.*, the worth of the services of the broker) the value of the option itself is considered to be 20 percent of the issue or market price.

The evidence shows that on September 23, 1964. the market price of National stock was $12.25. Assuming that on Septem-

ber 23, 1964, the Commissioner of Corporations had before him an application to issue additional shares of National and that such application also involved the question of the approval of the issuance of a stock option to a broker as compensation for him for services, Mr. Mattes indicated the commissioner would approve an option to the broker for an exercise price of $13.475 (110 percent of $12.25), and in doing so he would attribute to the option a value of 20 percent of the market price of $12.25 or $2.45. If the broker holding such an option then exercises it so as to acquire one share of National, his cost of that share is $15.925 (the 110 percent exercise price of $13.475 plus his services valued at $2.45). If at the same time the plaintiff exercised his 1957 option, his cost would be $7.36, or $9.565 less than that of the broker. If this difference is assigned to the per share value of the 1957 option, then it has a value of $72,445.31. On the same basis the 1958 option has a per share value of $8.80 and a total value of $266.604.80. The combined value of the options as determined by the evidence given by Mr. Mattes is $339,050.11, an amount greater than the figure of $302,724.17 as determined by the court.

 In the instant action the court properly received and considered the evidence of National's financial condition subsequent to the date of Klein's purported repudiation (March 29, 1962), and also considered the market price of National's stock subsequent to such date. Obviously, in determining the value of options having unexpired terms of two and three and one-half years, respectively, on March 29, 1962, the court need not and should not shut its eyes to events occurring up to the time of judgment. These facts are probative of the ascertainable value of the options.

It is true the foregoing evidence as to damages is lacking in exactness. However, as stated in *Stott* v. *Johnston* (36 Cal.2d 864 [229 P.2d 348, 28 A.L.R.2d 580]) in speaking of an allowance in damages for loss of good will: ". . . Analogous considerations have arisen in cases where recovery for loss of future profits was sought, and the courts have been reluctant to reverse a reasonable damage award because the precise amount of damage was not definitely ascertainable. In this regard it appears to be the general rule that while a plaintiff must show with reasonable certainty that he has suffered damages by reason of the wrongful act of defendant, once the cause and existence of damages have been so established, recovery will not be denied because the damages are difficult of ascertainment. [P. 875.] . . . The law only requires that

the best evidence be adduced of which the nature of the case is capable [citation], and the defendant whose wrongful act gave rise to the injury will not be heard to complain that the amount thereof cannot be determined with mathematical precision. . . ." (P. 876.) (See *Martin* v. *Town & Country Dev., Inc.*, 230 Cal.App.2d 422, 429 [41 Cal.Rptr. 47, 10 A.L.R.3d 1347].)

"One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness." (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177]; see *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.*, 289 U.S. 689 [77 L.Ed. 1449, 53 S.Ct. 736].)

Measured by the foregoing rules, the alternative finding that plaintiff, because of defendants' wrongful acts, has suffered damages in the amount indicated finds sufficient support in the evidence.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 5, 1967, and appellants' petition for a hearing by the Supreme Court was denied November 22, 1967.