**Harold N. HOLT, Plaintiff-Appellant,**

v.

**SEVERSKY ELECTRONATOM CORPORATION, Defendant-Appellee.**

**No. 62, Docket 71–1327.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 5, 1971.

Decided Nov. 9, 1971.

David E. Schwab, II, New York City
(Schwab & Goldberg, Morton L. Price,
New York City, on the brief), for plain-
tiff-appellant.

Mitchell M. Bailey, New York City (Pross, Halpert, Lefevre, Raphael & Alter, New York City, on the brief), for defendant-appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

In February 1968, plaintiff Harold N. Holt commenced an action against defendant Seversky Electronatom Corporation in the United States District Court for the Southern District of New York. Holt alleged a breach of his employment agreement by Seversky and sought $81,666.67 damages for unpaid and lost salary and $1,200,000 damages for the deprivation of certain stock option rights. On March 1, 1971, on motion of defendant, Richard H. Levet, J., granted summary judgment in favor of plaintiff in the limited amount of $1,833.33 on the claim for lost salary. Later that day, after plaintiff had rested during the jury trial of the case, the judge dismissed the claim based on the stock option. Plaintiff appeals from the judgment entered pursuant to these rulings. We affirm.

I

The facts may be stated briefly. Following some months of negotiations, Holt began employment with Seversky in late August 1967, pursuant to an informal agreement which both parties agree contemplated a "trial" period of four to six months. A month later the agreement was reduced to a formal contract of employment for three years. The monthly salary was $1,667.67 until February 1, 1968, and $2,500 thereafter. The agreement granted Holt an option under the corporation's "Qualified Stock Option Plan" to purchase 20,000 shares of the corporation's stock, at $2.50 per share. A key provision of the contract incorporated the parties' understanding of the "trial" period in the following language:

It is understood that the Corporation may terminate this agreement as of February 1, 1968, by giving [Holt] at least thirty days' written notice prior thereto of its intention of such termination.

In early January 1968, a parting of the ways began. From January 3 to January 15, Holt considered requests by Seversky's president to extend the trial period at the lower salary for an additional six months. Holt finally refused and on January 24 he received written notice that his employment "has been terminated." One month later, the present action was commenced. The parties agree that New York law applies, and we accept that law as controlling in this diversity action.

II

We agree with the district court's conclusion that under the "trial" period provision of the employment agreement Seversky's notice of termination was untimely. Written notice was first given to plaintiff on January 24, rather than on January 2, thirty days prior to February 1. At first blush, then, the question presented by the claim for lost salary[1] appears simple: What are the legal consequences of Seversky's untimely notice? This question is complicated, however, by the lack of controlling New York authority on the precise point.

Holt contends that Seversky's failure to give timely notice resulted in the complete loss of its right to terminate the agreement. From this premise, Holt argues that his discharge was wrongful and, under settled New York law, the proper measure of his damages is *prima facie* the salary that would be payable to

---

1. The complaint contained two claims for salary: one for unpaid salary for the period January 1 to 21, 1968, and the other for lost salary after that date. The former was settled by a pre-trial order directing payment for that period. For the latter period, the judge awarded $1,833.33, apparently representing the salary due for one month. The precise manner in which this figure was computed is not clear from the record but, in any event, is not the subject of appeal.

him for the period from the wrongful discharge to the end of the term of employment[2]—in this case, about $80,000. Plaintiff cites no New York authority,[3] however, in support of his basic argument that Seversky lost its right to terminate the agreement because of the untimely notice. Plaintiff does call our attention to the statement by Professor Corbin:

> The time and manner of exercising a power of termination may be specified in the contract; in such case an attempt to exercise it otherwise will be ineffective. * * * A provision that a contract may be terminated at one or more specified dates by giving 30 days notice requires that the notice be given 30 days before one of those dates; and time is of the essence. [Footnotes omitted.]

6 Corbin, On Contracts § 1266, at 65–66 (2d ed. 1962) [Corbin].

Defendant maintains that there was no wrongful discharge here but only a violation by an employer of a notice requirement in exercising an otherwise valid right to terminate. Defendant cites Williston as follows:

> In general, where a contract of ordinary employment stipulates for * * * a certain period of notice, the employment may be cancelled on shorter notice or with none at all upon payment of wages or salary for the period of notice.

9 Williston, A Treatise on the Law of Contracts § 1017, at 136 (3d ed. 1967). Under this rule, Seversky would only be liable to Holt for one month's pay rather than for the salary due for the remaining contract period of two years and nine months. The rule has been adopted by New York courts,[4] but thus far it has apparently only been applied in situations in which the contract provided for termination at any time upon the giving of a specified period of notice. In the present situation, the option to terminate was limited to one date—February 1. Nonetheless, the district court concluded that the New York courts would apply their broad rule to the present case, and accordingly the court limited Holt's recovery to $1,833.33.[5]

■■ Since there is an absence of controlling state authority on the proper measure of Holt's recovery, we are forced, as a federal court vested with diversity jurisdiction, to do the best we can in estimating "what the state court would rule to be its law." Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring). Although the broad statement from Corbin undoubtedly supports plaintiff's argument, but cf. 1A Corbin, § 273, at 593–594, we find no New York case adopting it in an employment situation. The New York case law relied upon by Seversky strongly suggests that whatever functions notice requirements may serve in other areas of contract and option law,[6] in employment relationships such requirements are principally viewed as protecting employees against suddenly being left without either a job or a salary. Accordingly, when an employee's protection has been diminished by a late notice of termination or no notice at all, New York courts have required the employer to pay the employee's salary for the full notice period. The New York courts have refused, however, to hold

2. See, e. g., Cornell v. T. V. Development Corp., 17 N.Y.2d 69, 268 N.Y.S.2d 29, 215 N.E.2d 349 (1966) ; 2 N.Y. Pattern Jury Instr.—Civil 912–17 (1968).

3. In the district court Holt relied on Page v. Shainwald, 169 N.Y. 246, 62 N.E. 356 (1901) ; Railway Advertising Co. v. Posner, 35 Misc. 285, 71 N.Y.S. 742 (Sup. Ct.App.T.1901) ; and Sasmor v. V. Vivaudou, Inc., 200 Misc. 1020, 103 N.Y.S. 2d 640 (Sup.Ct.1951). These cases were distinguished by the district court and are not relied upon on appeal.

4. See, e. g., Barth v. Addie Co., 271 N.Y. 31, 2 N.E.2d 34 (1936) ; Beck v. Fybern Holding Corp., 238 App.Div. 25, 263 N. Y.S. 9, 12 (4th Dep't 1933) ; 36 N.Y. Juris., Master and Servant § 59 (1964).

5. See note 1 supra.

6. See cases cited in note 3 supra.

that failure to comply strictly with these notice requirements will result in a "wrongful discharge" in the traditional sense.[7]

■ We do not suggest that this is an open and shut case, but we believe that the trial court was correct in holding that:

> [T]he contract provision here was merely indicative of the parties' intention, when contracting, that plaintiff be given ample notice if defendant did not wish to retain him after the six month trial period of employment was over.

By awarding plaintiff his salary for a full notice period, see note 1 *supra*, the district judge carried out this intention. Plaintiff's construction of the agreement actually cuts down the trial period from February 1 to January 2, since notice after that date would be ineffective. This is inconsistent with the use of February 1 as the date for a 50 per cent increase in salary, obviously coinciding with the end of a trial period. We realize that when a contract contains a specified termination date, if notice is delayed an employee may act to his detriment in reliance thereon, *e. g.*, by buying a house which can later be sold only at a loss. Possibly, the New York courts would then regard the limited measure of recovery (salary for the notice period) as inadequate and would not impose it. But this does not seem to be such a case and we need not speculate about what we should do if it were. We therefore conclude that the measure of recovery adopted by the district court was a good estimate of New York law and affirm the order insofar as it granted summary judgment on the issue of lost wages.

### III

The second argument Holt raises on appeal is that he is entitled to recover the value of certain stock option rights allegedly lost when Seversky discharged him.

■ The "Qualified Stock Option Plan" under which Holt's option rights were granted required that an employee whose employment had been "terminated for any cause, other than death" must exercise his right to purchase the company's stock within three months of the termination or forfeit his option. Holt concedes that he made no attempt to exercise his option rights by tendering the purchase price. Nonetheless, he seeks to avoid the impact of the plan's requirement on two grounds. First, relying on the principle that a party may not profit from his own wrong, Holt maintains that Seversky's wrongful discharge may not be permitted to accelerate the time period in which he would otherwise have been able to exercise his option. We have held, however, that although the discharge did not conform to the contract's notice requirement, it was not "wrongful" in the sense Holt urges. The cases cited,[8] therefore, are not persuasive.

■■ Second, Holt asserts that failure to tender the purchase price must be excused because Seversky would have refused the tender, if made. See Strasbourger v. Leerburger, 233 N.Y. 55, 134 N.E. 834 (1922). No such claim was made in the complaint. However, to support this assertion Holt attempted at trial to rely on six items of evidence, all excluded by the district court, which allegedly demonstrate Seversky's repudiation of the option and its intent to refuse tender. The first item, defendant's offer to Holt in January 1968, to exchange 1,000 shares of its stock in return for a release "from all terms of the contract," hardly evidences a repudiation of Holt's option rights. On the contrary, the offer suggests Seversky treated those rights as being alive, well, and

---

7. In addition to the authority cited in note 4 *supra*, *cf.* Ives v. Mars Metal Corp., 23 Misc.2d 1015, 196 N.Y.S.2d 247 (Sup. Ct.1960) (royalty agreement); Leslie v. Robie, 84 N.Y.S. 289 (Sup.Ct.App.T. 1903) (employment contract).

8. *E. g.*, Bertero v. National General Corp., 254 Cal.App.2d 126, 62 Cal.Rptr. 714 (1967); Haag v. International Tel. & Tel. Corp., 324 F.2d 205 (7th Cir. 1963).

potentially litigious. The second item, a filed draft of Seversky's Registration Statement which failed to list Holt as a holder of option rights, is similarly not sufficiently probative of a repudiation since, as even Holt noted at trial, the draft was "not a final filing" and was thus subject to amendment. As to the remaining four items,[9] Holt only became aware of them after he commenced his lawsuit without having attempted a tender. Thus they are simply irrelevant for purposes of establishing that he knew prior to suit that any tender would have been refused. See Strasbourger v. Leerburger, *supra*, 233 N.Y. at 60, 134 N.E. 834. It is true that Holt learned of some of this information after he commenced suit but still prior to the expiration of the period for tender. But we believe that the New York courts would hold that the knowledge that excuses tender must be acquired before suit is brought. Certainly, there are venerable statements that a plaintiff "must show in some way that the other party is in default *in order to maintain the action*." (Emphasis added.)[10] Although these cases did not focus on the precise issue, unless knowledge that tender will be refused is communicated to a plaintiff prior to suit, it cannot properly be said that a defendant "is in default"; he has simply not been required to perform or to place himself in breach of the contract. To be sure, the authorities just cited come from an earlier era, but the basic notion they embody has evidently retained its vitality, see UCC § 2–511(1) (McKinney 1964), and appears to be in accord with the modern view of encouraging attempts to obtain voluntary compliance with contracts prior to the hardening of attitudes that invariably follows the commencement of litigation.

9. These were certain resolutions in minutes of a board of directors meeting, certain denials in the Answer and in defendant's answers to interrogatories, and responses of defendant's president upon oral deposition.

10. Ziehen v. Smith, 148 N.Y. 558, 560, 42 N.E. 1080 (1895); see Rosenthal Paper

*Cf.* Official Comment 1, UCC § 2–609(1) (McKinney 1964).

Accordingly, the district court properly dismissed the cause of action based upon the alleged deprivation of stock option rights.

Judgment affirmed.

Co. v. National Folding Box & Paper Co., 226 N.Y. 313, 322, 123 N.E. 766 (1919); George Leuders & Co. v. Fahlberg Saccharine Works of America, 150 N.Y.S. 635 (Sup.Ct.App.T.1914); *cf.* Carmody-Wait § 41:16 (2d ed. 1966). See also 10 N.Y.Juris., Contracts, § 294 (1960); 3A Corbin § 629.