[Civ. No. 27727.    Second Dist., Div. One.    June 1, 1964.]

ERWIN RAUTENBERG, Plaintiff and Appellant, v. JOHN
L. WESTLAND, JR., et al., Defendants and Respondents.

Philip Saltz for Plaintiff and Appellant.

Ackert & Brust and W. H. Brust for Defendants and Respondents.

KINCAID, J. pro tem.[*]—Appeal is taken herein by plaintiff from a judgment for the defendants following a motion made pursuant to section 631.8 of the Code of Civil Procedure, and from a denial of plaintiff's motion for a new trial.

Plaintiff's cause of action is one for specific performance of a written agreement, dated June 27, 1961, made and entered into between Erwin Rautenberg, plaintiff and appellant herein, and John L. Westland, Jr. and John L. Westland & Son, Inc., the defendants and respondents herein.[1]

---

[*]Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

[1]"AGREEMENT TO SELL STOCK IN JOHN L. WESTLAND & SON, INC. BY STOCKHOLDER JOHN L. WESTLAND, JR., AND AGREEMENT PERTAINING TO OTHER MATTERS.

"WHEREAS, the parties hereto in consideration of their mutual promises, each to the other, hereinafter stated, have agreed, and by these present do agree, as follows, to wit:

"*FIRST*: John L. Westland, Jr. agrees to sell 50% of the outstanding capital stock in the firm of John L. Westland & Son, Inc., a California Corporation, to Erwin Rautenberg, a citizen of the United States and a legal resident of the State of California.

"*SECOND*: Erwin Rautenberg agrees to buy the stock under the following conditions:

"*a*. The agreed price per share is $10.00 which will be paid for in cash or in other valuable considerations.

"*b*. The total issued stock on the books of the corporation as of the day of the signing of this agreement is 422 shares, and it is mutually agreed that no additional shares be issued during the term of the option stated herein.

"*c*. The total amount of shares available under this agreement will be 211 shares.

"*d*. A time limit of 365 days from the date of this agreement when signed by both parties is the total time for the stock to be sold, and to be purchased by Erwin Rautenberg, and it is agreed that the stock will be sold in not more than five sales.

"*e*. If John L. Westland, Jr. and Erwin Rautenberg do not fully agree on the operation of John L. Westland & Son, Inc. during the 365 days this stock option has to run, it is further agreed that Erwin

The complaint seeks aid of the court to specifically compel defendants to sell and transfer 86 shares of the defendant corporation's capital stock and to enjoin the corporation

---

Rautenberg can sell the stock back to John L. Westland, Jr. only. The same price that is to be paid for the stock upon the original purchase will be the price to be paid for the stock in the event this part of the contract or agreement is used. ·

"f. It is mutually agreed that the stock in possession of either John L. Westland, Jr. or Erwin Rautenberg cannot be sold to any other person without first refusal being offered to each other or one to another.

"g. In the event of death of either party the stock of the deceased will be purchased by the remaining party at terms to be agreed upon within 180 days from the signing of this agreement to protect the remaining heirs of the deceased party.

"THIRD: It is the purpose of this agreement to sell stock of John L. Westland, Jr. in the John L. Westland & Son, Inc. to bring together the two parties in a business venture that should be mutually profitable for each, and that the aim be that eventually each become a true partner of the other in their respective business enterprises that they are now engaged in or will become engaged in the future, as long as they mutually agree to maintain such relationship.

"FOURTH: It is mutually agreed that there is not now, and there will not be in the future any objection on the part of either party to separate corporations being set up to conduct the business now carried on in the branch offices of John L. Westland & Son, Inc. It is agreed that if business is conducted by separate corporations in other cities in place of or in addition to the present business of John L. Westland & Son, Inc. that the following will apply:

"a. Branch managers who are employees of John L. Westland & Son, Inc. at the time of the signing of this agreement by both parties will be given a small minority stock interest or will be allowed to buy a small minority at the time the new corporation commences to operate. In either method of acquiring the stock it is agreed that such stock cannot be sold to other than the two majority stockholders, Erwin Rautenberg and John L. Westland, Jr., in equal amounts to each major stockholder, and must be sold if they leave the employ of John L. Westland & Son, Inc. or Westland & Co., Inc. or other corporations held by John L. Westland, Jr. and/or Erwin Rautenberg.

"b. It is herewith agreed that if Westland & Co., Inc. of San Francisco is put into operation, Erwin Rautenberg will be offered a substantial share of the stock or a number of shares equal to those held by John L. Westland, Jr. He will exercise reasonable supervision and control over the transactions of the San Francisco office and be willing to place his Customhouse Broker's license in the new corporation.

"c. It is agreed that if Westland & Co., Inc. of San Diego is put into operation, Mr. Erwin Rautenberg will be offered up to 10% of the issued stock as an incentive to watch over and consult as requested, and will be elected to the Board of Directors and offered an executive position, if he so desires, and be willing to put his Customhouse Broker's license into the new corporation.

"FIFTH: It is fully agreed and understood that neither Erwin

from disposing of any of its property, from the holding of any meeting of its shareholders and from the use of its assets for purposes other than the conduct of business of the corporation.

The trial court, among other things, in its findings of

Rautenberg nor any of his enterprises or connections in consideration of purchasing the 50% stock of John L. Westland & Son, Inc. shall in any way be liable for any past debts, judgments, etc. that have been or may be levied upon the firm of John L. Westland & Son, Inc. for actions of the firm or its former or present officers, Board of Directors, Employees or Agents, except to the extent of his stock ownership as provided by law.

"*SIXTH*: It is further agreed as follows:

"*a*. That Erwin Rautenberg will become General Manager, with or without the title as he desires, and that he be primarily in charge of the internal management and financial operations of the Los Angeles office which will include, but not be limited to, the expenditures of funds, including salaries, draws, advances, bankings, purchase of all items, entering into any contract where [*sic*] involving money or not, the assigning of personnel, their salaries, hiring, firing, etc.

"*b*. In consideration of the foregoing, Erwin Rautenberg is to be compensated by a bonus at year-end amounting to a sum to be mutually agreed upon at that time.

"*SEVENTH*: It is further agreed that:

"*a*. John L. Westland, Jr. will actively work and assist in the management and operation of John L. Westland & Son, Inc. and will spend reasonable time in the increasing of business through outside contacts and solicitations in all areas beneficial to the company.

"*b*. It is agreed that John L. Westland, Jr. will spend a reasonable amount of time coordinating the operations and efforts of the John L. Westland & Son, Inc. offices and enterprises.

"*c*. In consideration of the foregoing, John L. Westland, Jr. is to be compensated by John L. Westland & Son, Inc. with a salary of at least $750.00 per month beginning July 1, 1961, for at least half a year. Thereafter, a new rate of compensation is to be mutually agreed upon.

"*EIGHTH*: It is further agreed that:

"*a*. Upon the request of Erwin Rautenberg, John L. Westland, Jr. will spend whatever time is necessary to oversee the work of the offices and enterprises of Erwin Rautenberg, and will use his best efforts to protect and build up the business on such assignments. Also upon request, John L. Westland, Jr. is willing to place his Customhouse Broker's license at the disposal of Erwin Rautenberg's Customhouse Brokerage enterprises.

"*b*. It is agreed that John L. Westland, Jr. will assist Erwin Rautenberg and/or the business enterprises controlled by Erwin Rautenberg, in the capacity of a consultant in Customs, Aviation and other business matters, and in the promotion of Air Cargo.

"*c*. In consideration of the foregoing, John L. Westland, Jr. is to be compensated by Erwin Rautenberg or his enterprises by a sum of at least $550.00 per month for one year, starting July 1, 1961. In the event

fact, found as follows: 1. That the agreement entered into between the parties is not only for the sale of certain shares of stock, but is also an agreement for the rendition of personal services. 2. That the agreement entered into between the parties is not severable. 3. That the agreement is not specifically enforceable in that it lacks mutuality of remedy. 4. That said agreement is uncertain in its provisions.

Appellant now contends that the trial court erred in its foregoing findings in that (1) the lack of mutuality of remedy does not necessarily bar specific performance of the agreement to convey shares of stock to appellant; (b) plaintiff has satisfied the mutuality of remedy requirement by substantially performing his part of the contract between the parties; and (c) the agreement between the parties is not so uncertain that the remedy of specific performance would be denied to plaintiff.

█ Plaintiff is, and was at the time of the agreement, a licensed customhouse broker, and president and sole stockholder of Air-Sea Forwarders, Inc. Westland was the owner of 422 shares, being all of the outstanding and issued stock of defendant corporation.

Among other things, the agreement provides that Westland will sell 50 per cent of the outstanding shares of the corporation stock to plaintiff for the agreed price of $10 per share, subject to plaintiff's option to be exercised within a time limit of 365 days from the date of the agreement, such stock to be purchased in not more than five instalments.

---

of dissatisfaction to these terms of compensation, expressed by either party to this agreement, or if John L. Westland, Jr.'s occupations are basically changed or preventing him from attending to above functions, it is mutually agreed that the terms as stated herein will be less than one year.

"*NINTH*: Because of the mutual desire of both John L. Westland, Jr. and Erwin Rautenberg to conduct their business in cooperation and as joint managers to make more efficient use of space, materials, employees, etc., and to develop all of their various interests to a greater potential than they now have or possible to have working alone, it is the aim of this agreement to sell and this agreement to buy to bring both parties into equal authority each being delegated certain areas of specific responsibilities as outlined above. In no event does this delegation of responsibilities relieve either party in doing everything possible to further the business enterprises of each other to their mutual benefit.

" s/ERWIN RAUTENBERG

Jun 27 1961
s/J. L. WESTLAND, Jr.''

The agreement further provides that plaintiff is to perform personal services for defendant corporation as its general manager, for which he is to be compensated at the end of the first year by a bonus in a sum to be mutually agreed upon at that time. Westland is to work in assisting the management of the corporation, and will additionally provide personal services for plaintiff and assist him in such business enterprises as are controlled by him. Westland is to be compensated for his services to the corporation at $750 per month for at least six months, a new rate of compensation thereafter to be agreed upon. For his services to plaintiff and his business enterprises Westland is to receive the sum of $550 per month for one year, or less if either party is dissatisfied.

Pursuant to the terms of the agreement, plaintiff purchased 125 shares of the stock of defendant corporation from Westland. Plaintiff paid Westland's salary for the rendition of services to plaintiff and his business enterprises for the months of July and August 1961, when this arrangement was terminated.

In December 1961 the contractual arrangements whereby the plaintiff would be employed by and would perform personal services for defendant corporation were terminated. Plaintiff thereupon requested a bonus which was to compensate him for his managerial services to defendant corporation, but he has not been paid, and the amount thereof has never been agreed upon.

On April 23, 1962, plaintiff requested the transfer of an additional 86 shares of defendant corporation's capital stock from Westland and tendered payment therefor. The sale and transfer of such shares were refused.

Both the evidence and the provisions of the written agreement herein support the findings of the court that such agreement is one not only for the sale and purchase of certain shares of stock but is additionally for the rendition of personal services; that said agreement is not severable and lacks mutuality of remedy.

The very premise of the sale of the stock by Westland to plaintiff is the declared purpose in paragraph three of the agreement, "to bring together the two parties in a business venture that should be mutually profitable for each, and that the aim be that eventually each become a true partner of the other in their respective business enterprises that they are

now engaged in or will become engaged in the future, as long as they mutually agree to maintain such relationship.''

Paragraph seven provides for the employment of Westland by defendant corporation to assist in its management as well as to solicit outside business in its behalf.

Paragraph eight provides for the employment of Westland by plaintiff to oversee the offices and business enterprises of plaintiff not connected with defendant corporation and including the promotion of plaintiff's wholly owned Air-Sea Forwarders company. The salary payable to Westland as provided for in paragraph eight is the obligation of plaintiff personally and not that of defendant corporation.

Paragraph six obligates plaintiff to perform equally unique personal services for defendant corporation in that, as general manager, he is to be primarily in charge of its internal management and financial operation including the expenditure of funds, entering into of contracts, and the assigning, hiring or discharging of personnel.

By the terms of the agreement their obligations one to the other and to the corporation may continue only so ''long as they mutually agree to maintain such relationship.'' When these obligations cease the primary reason and consideration for their agreement fails.

Whatever remedy the plaintiff herein may have for recovery of damages for claimed breach of the agreement, it is clear from its express terms that the main purpose of the parties thereto was to secure the personal services of both plaintiff and Westland for each other and for the corporation. The agreement obligates the individual parties to perform acts requiring an exercise of personal judgment and a degree of cooperation in making the several enterprises successful which cannot be compelled by a court decree of specific performance.

Several code sections are applicable to the situation herein presented. They provide, in pertinent part, as follows:

Civil Code, section 3386: ''Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance.''

Civil Code, section 3390: ''The following obligations cannot be specifically enforced: 1. An obligation to render per-

sonal service; 2. An obligation to employ another in personal service; . . .''

Equity will not require the specific performance of the agreement herein, providing as it does for the rendition of services by the parties of a purely personal and discretionary nature. Such a remedy would not be mutual in that neither party could compel the other to perform or carry out such duties or services. (*O'Brien* v. *O'Brien*, 197 Cal. 577, 588 [241 P. 861]; *Adams* v. *Williams Resorts, Inc.*, 210 Cal.App.2d 456, 462, 463 [26 Cal.Rptr. 656]; *Lyon* v. *Goss*, 19 Cal.2d 659, 674, 675 [123 P.2d 11]; and *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158, 171 [88 P.2d 698, 89 P.2d 386].)

Plaintiff contends that he has satisfied the mutuality of remedy requirement by substantially performing his part of the contract between the parties. The trial court specifically found that he had not so performed. Such services as were rendered by plaintiff for defendants took place over a relatively short period of time on an employment agreement providing for its continuance for a time only so long as the parties were mutually agreeable and at a compensation subject to future agreement. Under these indefinite circumstances, the trial court was entitled to conclude that no sufficient showing of substantial performance was made by plaintiff.

The further ground that the agreement between the parties is so uncertain as to bar a decree of specific performance need not be discussed. For the reasons heretofore stated such agreement is not specifically enforceable and the judgment herein is affirmed. The purported appeal from the order denying a motion for a new trial is dismissed.

Fourt, Acting P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 22, 1964.