[No. B033734. Second Dist., Div. Two. June 8, 1989.]

ROBERT BARNDT, JR., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Roquemore, Pringle & Moore and Michael E. Moore for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, Patrick K. Meyers and Alan K. Terakawa, Deputy County Counsel, for Defendants and Respondents.

OPINION

COMPTON, J.—Nearly four years after he was denied appointment to the cardiology section of the Los Angeles County-University of Southern California Medical Center (County/USC Medical Center) as a physician specialist, plaintiff Dr. Robert Barndt, Jr., initiated this action against defendant County of Los Angeles (county) to specifically enforce the terms of a settlement agreement entered into by the parties for the purpose of resolving a long-standing employment dispute. Finding that plaintiff was collaterally estopped from seeking such relief because of the denial of his petition for writ of mandate in another proceeding, the trial court sustained defendant's demurrer to the third amended complaint without leave to amend. Following entry of a stipulated judgment of dismissal, plaintiff filed this appeal. We affirm.

Plaintiff, a licensed physician with a specialty in cardiology, commenced working at County/USC Medical Center as an intern in 1964.[1] By 1968, he had become a fellow of cardiology, and in 1977, he received a temporary appointment as supervisor of residents in the cardiology section. In July 1981, however, the medical center attempted to terminate plaintiff's employment, but subsequently withdrew its notice of termination. Some nine months later, plaintiff appealed his denial of a permanent position in the cardiology section to the county personnel department, claiming that he had not been promoted because of discrimination and other nonmerit factors in violation of rule 25 of the Los Angeles County Civil Service Rules. Following the dismissal of that appeal by the personnel department for lack of jurisdiction, plaintiff requested a hearing before the civil service

---

[1] Since this appeal follows the sustaining of a demurrer, we accept as true the properly pleaded allegations of the third amended complaint. (*Carr* v. *Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881, 885 [199 Cal.Rptr. 835]; *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1076 [195 Cal.Rptr. 576].) We also take judicial notice of the opinion filed by Division Five of this court on November 7, 1988, entitled *Barndt* v. *Los Angeles County Civil Service Commission,* B031447 [nonpub. opn.].

commission (Commission) because of the alleged discrimination. Within two weeks of the commencement of that action, however, the medical center notified plaintiff that he would be terminated from his position as supervisor of residents effective June 30, 1982.

In October 1982, prior to the start of the Commission's hearings, the county's department of health services agreed to withdraw its notice terminating plaintiff's employment, to restore him to his position in the cardiology section, and to appoint him to a permanent position in cardiology by November 16, 1982. For purposes of the settlement, the parties further agreed that plaintiff had at all times met the minimum requirements for appointment to the position of physician specialist in the cardiology section. Plaintiff, in turn, agreed to withdraw his appeal to the Commission and not to pursue any other available remedies.[2]

On November 16, 1982, contrary to the terms of the settlement agreement, the county assigned plaintiff to the hypertension section of the medical center and not to the cardiology section. As a result, on December 10, 1982, plaintiff renewed his request for a hearing before the Civil Service Commission, contending that he was a victim of discrimination and that the county had breached the agreement solely to avoid a potential personality

---

[2]The settlement agreement provided in pertinent part as follows: "1.   As to the matter of the release of [Barndt] from his position, the Department will and hereby does withdraw its action separating [Barndt] from his position as Supervisor of Residents, M.D., Temporary, Cardiology Section, LAC/USC Hospital.

"2.   The Department will and hereby does restore [Barndt] to said position effective July 1, 1982. [Barndt] shall be made whole from July 1, 1982 to the date he returns to work.

"3.   [Barndt] agrees to withdraw his appeal pending before the Civil Service Commission regarding his separation from Los Angeles County service effective June 30, 1982, and further agrees not to appeal said separation in any other forum.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"5.   As to [Barndt's] claim of non-appointment, it is agreed that [Barndt] shall be appointed to the permanent position of physician specialist, cardiology section, LAC/USC, as soon as possible, but in no event later than November 16, 1982.

"6.   [Barndt] shall and hereby does waive any claim for backpay for the difference between what he would have earned if he had been appointed to a permanent physician specialist item on February 1, 1977, when he was appointed to the position of Supervisor of Residents, Temporary.

"7.   It is agreed for purposes of this settlement that at all times relevant to this matter [Barndt] has met the minimum requirements for appointment to the position of physician specialist, cardiology section, LAC/USC.

"8.   The appointment of [Barndt] to the permanent position, cardiology section, LAC/USC, shall be to a permanent status. [Barndt] understands that commencing with his permanent appointment the Civil Service Rules require a probationary status which includes interim evaluations. [Barndt] shall not be discharged or otherwise removed from that position except for good cause. Good cause includes failure to maintain standards of performance or behavior, or economic requirements. . . ."

conflict between himself and the chief of the cardiology section. On May 25, 1983, following an evidentiary hearing, the Commission concluded that plaintiff's appointment to the hypertension section was reasonable under the circumstances and that there was no discrimination.

In April 1984, plaintiff filed a petition for writ of mandamus pursuant to Code of Civil Procedure section 1085, seeking to have the superior court order the Commission to enforce the settlement agreement and appoint him to the cardiology section. For reasons which are unapparent from the record, that action was not pursued. Following the commencement of the instant suit for specific performance and declaratory relief in November 1986,[3] plaintiff filed a second petition for writ of mandate in March 1987. Although that petition again asserted that the Commission had erroneously ignored the terms of the settlement agreement, it failed to include any record of the administrative proceedings. The trial court nevertheless found that plaintiff had failed to establish discrimination and that he was not appointed to the cardiology section because of a personality conflict. It also concluded that he was guilty of laches in seeking the writ.[4] Plaintiff subsequently challenged this ruling by the filing of a notice of appeal.

Following the denial of the petition, but before the appeal was heard, the county filed its demurrer to the third amended complaint in the instant case, arguing that the superior court's findings in the writ proceedings precluded plaintiff from again asserting the validity of the settlement agreement. As a separate ground, the county urged that plaintiff was guilty of laches because of unreasonable and prejudicial delay in filing the complaint.[5] Although the trial court was made aware of the pendency of the

---

[3] Plaintiff's complaint also sought damages against the University of Southern California and several individual defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and conspiracy to interfere with contract rights.

[4] The superior court's minute order, dated May 6, 1987, reads as follows: "Petitioner has failed to establish an abuse of discretion. Petitioner was not able to establish discrimination as he claimed. The only reason the settlement agreement was not carried out re: his appointment to the Cardiology Section was because of a personality conflict between petitioner and . . . [the chief of cardiology]. Petitioner is also guilty of laches."

[5] The trial court previously had sustained, with leave to amend, the county's demurrer to plaintiff's second amended complaint on the ground of laches. In so ruling, the court stated: "It has been over six years since the settlement agreement was signed. In that time period other persons have presumably assumed the position of Physician Specialist in the Cardiology Section. The mix of personalities in the section has certainly changed as there has been a natural evolution in skills necessary for both leadership and practitioner roles in the unit given the advances in medical science. A proper justification for the delay must be alleged." The subsequently filed third amended complaint alleged, inter alia, that plaintiff purposefully delayed bringing the action because he reasonably "believed the County would eventually live up to its obligations under the Settlement Agreement. The basis for plaintiff's belief were the

appeal by both parties, it sustained the demurrer on the ground that plaintiff was collaterally estopped from refuting the superior court's finding of laches.[6] Plaintiff and the county later stipulated to the entry of a judgment of dismissal.[7]

In an unpublished opinion filed November 7, 1988, division five of this court affirmed the denial of the writ after concluding that the superior court lacked jurisdiction to grant plaintiff any form of relief whatsoever.[8] In so holding, the court observed: "Barndt's potential remedy is to pursue his separate action against the county for specific performance of the settlement agreement." In a footnote, the court went on to say: "The commission's findings are not binding on the court which tries Barndt's action for specific performance. The commission was only, within its limited jurisdiction, determining whether the civil service rules were violated. It was not determining, nor could it determine the enforceability of the settlement agreement under general principles of contract law. *Likewise, the trial court's finding of laches in this case is of no significance: that issue never should have been reached because of the jurisdictional problems we find dispositive here.*" (Italics added.)

In light of the foregoing decision, the county now concedes that the trial court in our case erroneously sustained the demurrer to the third amended complaint by relying upon the findings of the superior court in the writ proceedings. Notwithstanding that concession, the county contends that the trial court made an independent finding of laches which supports the sustaining of the demurrer or, at the very least, that the complaint establishes laches as a matter of law. Based upon our review of the record, however, we cannot so conclude.

Contrary to the county's assertion, there is no indication whatsoever that the trial court based its finding of laches on anything but the ruling of the

representations, implied and express conduct and statements of the county through its agents and employees. . . ."

[6] The trial court's minute order states in relevant part: "In particular, the minute order of 5-6-87 is noted. Judge Torres specifically found, inter alia, that 'Petitioner is also guilty of laches.' . . . Plaintiff is collaterally estopped to refute that defense, which appears as a matter-of-law. [¶] Demurrer sustained without leave (CCP § 430.10(e))."

[7] The stipulated judgment of dismissal did not include plaintiff's other causes of action for damages.

[8] In reaching this conclusion, the court reasoned: "Nothing in the county charter or civil service rules gives the commission the power to determine whether a breach of contract has occurred or to enforce settlement agreements between county employees and the Department of Health Services. Accordingly, the superior court had no power to order the Civil Service Commission to take action beyond its jurisdiction." The court further determined that the superior court was precluded from reviewing any of the Commission's substantive findings because of plaintiff's failure to supply an adequate record of the administrative proceedings.

superior court in the writ proceedings. Moreover, the third amended complaint does not establish the defense as a matter of law sufficient to support the sustaining of a demurrer. ■ Witkin states the applicable law as follows: ". . . [L]aches consists of *unreasonable delay* which results in some *prejudice* to the defendant; delay alone, apart from the statute of limitations, is not a bar. If the complaint merely discloses the lapse of a long period of time without affirmatively showing or necessarily implying any injury to the defendant therefrom, it does not show laches on its face, and a demurrer should not be sustained. Prejudice may then be pleaded in the answer and the issue will be determined at the trial." (5 Witkin, Cal. Procedure (3d ed. 1985), Pleading, § 913, p. 351, italics in original.) Here, the complaint adequately pleads justification for the delay based upon plaintiff's belief that the county intended to comply with the settlement agreement. We cannot say at this stage of the proceedings that, as a matter of law, such belief was unreasonable or that the delay in filing resulted in undeniable prejudice to the county.[9] (See *Zakaessian* v. *Zakaessian* (1945) 70 Cal.App.2d 721, 724-727 [161 P.2d 677].)

Having so concluded, we ordinarily would reverse the judgment of dismissal and remand the matter for further proceedings. Our independent research, however, has convinced us that the dismissal must be affirmed.[10]

■ It has long been established that a contract to perform personal services cannot be specifically enforced, regardless of which party seeks enforcement. (*Poultry Producers etc.* v. *Barlow* (1922) 189 Cal. 278, 288 [208 P. 93]; 5A Corbin, Contracts, § 1204, p. 398; Dobbs, Remedies, § 12.25, pp. 929-931.) The rule evolved because of the inherent difficulties courts would encounter in supervising the performance of uniquely personal efforts. "A fundamental reason why courts will not order specific performance of personal services contracts is because such an order would impose on the courts a difficult job of enforcement and of passing judgment upon the quality of performance. [Citations.] As Corbin observes in his treatise, 'An artist does not work well under compulsion, and the court might find it difficult to pass judgment upon the performance rendered.' (5A Corbin,

---

[9] Although the record contains the declaration of the chief of cardiology which details the prejudice purportedly suffered by the county because of the delay, we cannot consider it here. For purposes of this appeal we accept as true only the properly pleaded allegations of the complaint. (See *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

[10] Pursuant to Government Code section 68081, we notified counsel at oral argument of our intention to affirm the judgment on a ground not raised by either party. Both plaintiff and defendant later submitted supplemental briefs addressing the issue we believe is dispositive of the instant appeal. The case was submitted for decision following an additional round of oral argument.

*supra,* § 1204, p. 400.)" (*Motown Record Corp.* v. *Brockert* (1984) 160 Cal.App.3d 123, 137 [207 Cal.Rptr. 574].) During the Civil War era, there emerged a more compelling reason for not directing the performance of personal services: the Thirteenth Amendment's prohibition of involuntary servitude. (*Beverly Glen Music, Inc.* v. *Warner Communications, Inc.* (1986) 178 Cal.App.3d 1142, 1144 [224 Cal.Rptr. 260].) More importantly, however, the common law disfavored specific performance to avoid the friction and social costs that often result when employer and employee are reunited in a relationship that has already failed. (See *Poultry Producers etc.* v. *Barlow, supra,* 189 Cal. at p. 288; Rest.2d, Contracts, § 367 com. (a) at p. 192.) This rationale is particularly applicable where the services to be rendered require mutual confidence among the parties and involve the exercise of discretionary authority. (See *Rautenberg* v. *Westland* (1964) 227 Cal.App.2d 566, 573 [38 Cal.Rptr. 797].)

In this state, the common law rule is codified in Civil Code section 3390 as follows: "The following obligations cannot be specifically enforced: 1. An obligation to render personal service; 2. An obligation to employ another in personal service." Under this statute, "[n]either an agreement to *render personal service,* nor an agreement to *employ another in personal service,* is specifically enforceable; i.e., the employee cannot be forced to serve, and the employer cannot be forced to hire." (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 48, p. 5270, italics in original.) In lieu of specific performance, the remedy for breach of a personal service contract is an action for damages. The loss of employment is not generally considered a loss that is inherently immeasurable or noncompensable in monetary terms. Indeed, "[t]he presence of an adequate remedy at law is often given as a specific reason for denying specific performance of a contract for services, and the general rule in respect of contracts for personal services is that for breach thereof a party must avail himself of the remedy afforded at law." (71 Am.Jur.2d, Specific Performance, § 164, pp. 211-212.)

■ Whatever remedy the plaintiff in our case may have for recovery of damages for the claimed breach of contract by the county, we think it clear that the settlement agreement contemplates the rendition of personal services which cannot be enforced by an action for specific performance. The public policy against compelling an employer to retain the services of an employee after disputes have arisen and loyalty and confidence have been eroded is particularly applicable here. The position to which plaintiff aspires requires a marked degree of cooperation and goodwill among the parties which an equitable decree simply cannot regulate. In light of the personality conflict which plaintiff concedes exists between himself and the chief of the

cardiology section, the remedy of specific performance is simply not available to enforce the terms of the settlement agreement.

Relying upon *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56 [42 Cal.Rptr. 473], plaintiff nevertheless asserts that he is entitled to specific performance because the county's breach of the settlement agreement deprived him of the right to practice his chosen profession as a cardiologist. In *Colvig*, an arbitration award directed that the plaintiff be reinstated to his position as a radio staff announcer after finding that he had a "right" to practice that profession under the terms of a collective bargaining agreement. The award, which was later confirmed by entry of a judgment in superior court, further ordered that plaintiff was entitled to back wages for the period he was precluded from performing his job. Although the employer eventually reimbursed him his salary, it refused to reinstate him to his former position. The plaintiff subsequently instituted suit to recover damages for his employer's failure to abide by the terms of the judgment. On appeal from a dismissal of that action following the sustaining of a demurrer without leave to amend, the court found that plaintiff had stated a cause of action for breach of contract. After concluding that the complaint alleged "a primary right in plaintiff that he be restored to his position of staff announcer and that he be permitted to practice his profession as such announcer, and a breach or infringement of that right by defendant" (*id.* at p. 66), the court held that the plaintiff was entitled to prove that his reputation had been diminished by his employer's failure to reinstate him to his former position.[11]

In the case at bench, unlike *Colvig*, plaintiff sought specific performance of the settlement agreement and *not* an award of damages for breach of contract. While it may be true that plaintiff's reputation has suffered because of the county's alleged refusal to allow him to practice as a cardiolo-

---

[11] In so concluding, the court stated: "As a general rule an employer does not have the duty to provide work for his employee but may utilize his employee's services, when and how he chooses, so long as he pays the employee the agreed-upon salary. An exception to this rule exists where the employee's reputation will suffer if he is not allowed to practice his profession. The rationale of this exception is that the parties are deemed to have contracted on the assumption that the employee was to be given opportunities for the exercise of his abilities during a reasonable portion of the period covered by the contract. [¶] . . . From the facts pleaded, although somewhat ineptly, it can be gleaned that under his contract of employment, plaintiff, as a highly paid professional man, was to be given the opportunity to exercise his abilities, an anticipated benefit of which was the acquisition of a reputation in the public eye which would be enhanced by his appearance through the media of the radio waves and diminished by his failure to make such appearance. To hold otherwise would be tantamount to saying that as a matter of law plaintiff cannot fit into the category of employees coming within the exception to the general rule. Such a conclusion cannot be reached herein upon the facts pleaded." (*Id.* at pp. 67-68.)

gist, he is not entitled to an equitable decree enforcing the terms of the agreement as a means of compensating him for the damage he may have sustained. *Colvig* does not hold otherwise. Plaintiff has not shown, nor could he, based upon the allegations of the complaint, that an award of monetary damages would not adequately compensate him for any loss of professional status flowing from the county's purported breach of the contract. Under the circumstances presented here, he is limited to an action at law.[12]

Contrary to the arguments advanced by plaintiff, this is not a case involving the discharge of an employee in violation of antidiscrimination or other statutes which mandate reinstatement. The Civil Service Commission's findings are determinative on this issue. What is involved here, however, is a purely contractual dispute which may best be resolved in an action for damages.[13] Plaintiff's status as a "public employee" does not alter our conclusion in this regard. Any rights which flow from such employment already have been vindicated in the civil service proceedings. The issues raised therein have been fully litigated and may not be asserted here under the guise of an action for specific performance.

We have reviewed plaintiff's remaining contentions and find none that warrant further discussion. The trial court properly sustained the county's demurrer to the first amended complaint without leave to amend, albeit for a reason different than we have discussed here.[14]

---

[12] Plaintiff argues that even though specific performance may not be available here, he is entitled to litigate his cause of action for declaratory relief. Although a party to a personal service contract is not precluded as a matter of law from seeking declaratory relief (see *Bertero* v. *National General Corp.* (1967) 254 Cal.App.2d 126 [62 Cal.Rptr. 714]), that remedy does not avail plaintiff anything in this case. We think it clear that a declaration of rights and liabilities under the settlement agreement would be inconsequential in the absence of any enforceable remedy.

[13] We note here that plaintiff's original complaint, filed in November 1986, sought an award of damages for the county's alleged breach of the settlement agreement. Defendant demurred to that cause of action, however, on the ground that plaintiff had failed to comply with the claims filing requirements of Government Code section 900 et seq. The trial court sustained that demurrer with leave to amend. Plaintiff's subsequently filed first amended complaint omitted, of course, any claim for damages flowing from the purported breach of the contract.

The fact that plaintiff may be precluded from seeking damages because of his failure to file a timely claim with the county does not justify the use of specific performance in this case. Nor does it establish the inadequacy of the remedy at law.

[14] " 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

The judgment of dismissal is affirmed. Each side to bear its own costs on appeal.

Roth, P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 23, 1989.