9 F.3d 1551
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michel X. HOUGLET, Plaintiff-Appellant,
v.
BARRA, INC., a California corporation formerly known as Barr
Rosenberg Associates, Inc.; Andrew Rudd; and
Ronald J. Lanstein, Defendants-Appellees.
 No. 92-15516.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 11, 1993.
Decided Oct. 14, 1993.
 
 Before: SNEED, POOLE and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael X. Houglet appeals the district court's summary judgment in favor of BARRA, Inc. in Houglet's lawsuit alleging federal and state securities fraud and related state law fraud and fiduciary duty claims. We now affirm.
 
 I.
 
 3
 Summary judgment is reviewed de novo. Hanon v. Dataproducts Corp., 976 F.2d 497, 500 (9th Cir.1992). It is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Hanon, 976 F.2d at 500.
 
 II.
 
 4
 Houglet raises two arguments in this appeal. First, he contends that BARRA's alleged statement that there was "no market" for his shares was either false, or was a half-truth requiring disclosure of BARRA's intended public offering in order not to be actionably misleading.
 
 
 5
 Second, Houglet argues that, apart from any falsehoods or half-truths BARRA may have told him, the company had an affirmative duty as a fiduciary to tell him of its planned public offering.
 
 
 6
 Although Houglet has advanced a number of distinct causes of action, all are grounded, in one way or another, on these two instances of alleged misconduct.[1]
 
 
 7
 We have concluded we must affirm the district court on each theory.
 
 A. The "No Market" Allegation
 
 8
 Houglet concedes that the "no market" allegation was not pleaded in his complaint, and was not addressed by the district court in its decision. But he argues that we should nevertheless consider the allegation because, although it was not pleaded, it was put before the district court in affidavits and at argument in the summary judgment proceedings.
 
 
 9
 We do not think that is enough. The district court did not address the "no market" allegation in its decision. The defendants did not argue it. To decide the issue now would be to "transform the court of appeals into a court of first instance," deciding for the first time on appeal whether the unpleaded allegation precluded summary judgment. See Vincent v. Trend W. Technical Corp., 828 F.2d 563, 570-71 (9th Cir.1987).
 
 
 10
 Moreover, because the "no market" statement was part of a fraud claim, it was required to have been expressly pleaded in Houglet's complaint. Fed.R.Civ.P. 9(b). The proper course for Houglet was to seek leave of the district court to amend his complaint, something he did not do. We decline, as we have done in the past under similar circumstances, Jackson v. American Bar Association, 538 F.2d 829, 833 (9th Cir.1976), to address the unpleaded allegation or to remand for a belated amendment of the complaint.
 
 B. The Affirmative Duty to Disclose
 
 11
 Turning to Houglet's second major contention, we address his argument that BARRA had an affirmative duty to disclose its upcoming public offering. We consider first whether BARRA had an affirmative duty under federal securities law, as our resolution of that issue will dispose of the state securities, fraud, and fiduciary duty claims.
 
 
 12
 Whether a defendant had an affirmative duty to disclose under Rule 10b-5 is evaluated with reference to five factors: "(1) the relationship of the parties, (2) relative access to information, (3) the benefit that the defendant derives from the relationship, (4) the defendant's awareness that the plaintiff was relying upon the relationship in making his investment decision, and (5) the defendant's activity in initiating the transaction." Jett v. Sunderman, 840 F.2d 1487, 1492-93 (9th Cir.1988).
 
 
 13
 a. Relationship of the parties.
 
 
 14
 Houglet argues that he stood in a fiduciary relationship to BARRA because he was a minority shareholder of the company. See Jones v. H.F. Ahmanson & Co., 81 Cal.Rptr. 592, 599 (Cal.1969) (minority shareholders owed fiduciary duties). As a fiduciary, Houglet would be owed an affirmative duty of disclosure of the public offering.
 
 
 15
 The district court did not dispute that minority shareholders are owed a fiduciary duty, but said that Houglet's status as a minority shareholder ended when he was terminated from the company. We agree. In signing the Buy-Sell Agreement, Houglet agreed to give up his status as minority shareholder upon his termination for "any reason whatsoever" as an employee of BARRA. When he agreed to lose that minority shareholder status upon termination, Houglet also agreed to lose the fiduciary entitlements that came with it.
 
 
 16
 The facts of this case provide a stronger basis for this conclusion than did those in Coleman v. Taub, 638 F.2d 628 (3rd Cir.1981), in which a similar conclusion was reached. In Coleman the repurchase agreement stated that a mutually agreeable price would govern the repurchase of shares. This indicated that the parties anticipated at least the possibility of post-termination price negotiations. Here, the Buy-Sell Agreement used a preset formula to calculate the repurchase price, an arrangement consistent with an intent to avoid negotiations and to facilitate a quick and mechanical repurchase of shares. The fact that Houglet's objections--sincere though they no doubt were--resulted in a process that was neither quick nor mechanical does not mean that the Buy-Sell Agreement contemplated an ongoing fiduciary obligation.
 
 
 17
 We also agree with the district court that Houglet's claim of wrongful termination does not change this conclusion. Even if Houglet could show his termination was wrongful--a doubtful prospect, but one we need not decide--Houglet would still not be entitled to reinstatement, either as an employee or a minority shareholder. See Barndt v. County of Los Angeles, 259 Cal.Rptr. 372, 376-77 (Cal.Ct.App.1989). Hence, even if Houglet is correct that he was wrongfully terminated, that would not change the fact that BARRA's fiduciary duties to him had ended.
 
 
 18
 We have considered Houglet's other arguments concerning a fiduciary duty owed by BARRA, and do not find them persuasive. We hold that there was no continuing fiduciary relationship. We conclude, therefore, that the first Jett factor, the relationship of the parties, weighs strongly in BARRA's favor.
 
 
 19
 b. Relative access to information.
 
 
 20
 The district court found that Houglet was free to ask BARRA any questions, including whether a public offering was planned. Houglet does not point to evidence in the record to the contrary. This factor tilts in BARRA's favor.
 
 
 21
 c. Defendant's benefit.
 
 
 22
 The district court found that it was Houglet who benefitted from the negotiations, because he received $1.3 million for his shares. Houglet argues, however, that the court should have considered the profit BARRA made from repurchasing his shares at the price it did.
 
 
 23
 Even if Houglet is correct that any profit BARRA gained from his shares ought to be included in assessing BARRA's benefit, he does not demonstrate that there was in fact such a profit. It is true that in its public offering BARRA sold shares at a substantially higher price than Houglet received. But before Houglet can label that profit as the spoils of BARRA's fraud, he must show that the Buy-Sell Agreement's formula, which was backward-looking in its estimation of BARRA's worth, could have permitted any higher valuation of his shares than the price he received for them. Houglet has not made such a showing.
 
 
 24
 Accordingly, we do not think this third Jett factor tilts in his favor.
 
 
 25
 d. Awareness of plaintiff's reliance.
 
 
 26
 Here the district court found that given the adversarial nature of the negotiations, BARRA would have little reason to think Houglet was relying on his close relationship to the company. We agree. With both sides represented by counsel and with discussions sufficiently acrimonious that professional mediators had to be called in, BARRA was unlikely to have thought Houglet would rely on it to volunteer information. BARRA reasonably could have assumed Houglet would ask questions about the areas of his concern, including those concerning plans for his shares. This factor tilts in BARRA's favor.
 
 
 27
 e. Initiation of the transaction.
 
 
 28
 It is difficult to say who initiated the "transaction." Both parties signed the Agreement under which Houglet was obligated to sell back his shares. It was BARRA that terminated Houglet, giving rise to the repurchase transaction; but it was Houglet who resisted reselling his shares. This fifth and final factor does not clearly weigh in on either side.
 
 
 29
 We conclude that the five Jett factors indicate that BARRA did not owe Houglet an affirmative duty to disclose its plans for a public offering. Houglet's Rule 10b-5 claim therefore fails. In addition, because Houglet's remaining claims all rest either on the "no market" allegation or on alleged fiduciary obligations, both rejected above, his other claims must fail as well. Accordingly, the judgment of the district court is
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Houglet's reply brief raises for the first time in this appeal alleged misrepresentations other than the "no market" statement. We ordinarily do not consider claims raised for the first time in the reply brief, nor claims raised in either brief which are identified but not argued. See, e.g., Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 923-24 (9th Cir.1988) (appellate claims that are named but not argued are waived). Because Houglet merely identifies, but does not argue, these additional misrepresentations, we deem them waived. We note, however, that we believe the claims were properly decided in the district court