[No. B152534. Second Dist., Div. Seven. May 15, 2002.]

JACK HERMAN, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Mastagni, Holstedt & Amick and Richard J. Chiurazzi for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House for Defendant and Respondent.

OPINION

JOHNSON, J.—Petitioner Jack Herman sought a writ of mandate ordering respondent County of Los Angeles (County) to meet and confer with Herman's former employer, the Los Angeles County Metropolitan Transportation Authority (MTA), and reach mutual agreement on his placement in a job pursuant to a contract between the two agencies. The trial court denied the writ and Herman filed a timely appeal. We reverse.

### FACTS AND PROCEEDINGS BELOW

In 1997 the MTA abolished its police force and contracted with the County to provide it with law enforcement services through the County sheriff. As discussed in more detail below, the contract provides for the transfer of the MTA's police officers to the County Sheriff's Department if they pass the sheriff's personnel review process. As to those MTA officers who do not pass the sheriff's review, the contract provides in appendix A, section 2.1(A) the parties "shall meet and reach mutual agreement on the placement of such personnel."

Herman is a former MTA police officer who did not pass the sheriff's review process. Neither the MTA nor the County offered him an alternative position. On the contrary, representatives of the MTA and the County met and mutually agreed *not* to place Herman in MTA or County employment.

Herman filed a petition for writ of mandate in the superior court seeking an order directing the County to meet with the MTA and reach mutual agreement on a job for him as required by section 2.1(A) of the contract. The County opposed the petition principally on the ground it satisfied its obligation under the contract by meeting with the MTA and mutually agreeing on Herman's placement, the agreement being that he would not be placed with either agency. The trial court denied the writ petition and this appeal followed.

## DISCUSSION

Section 2.1(A) of the contract states in relevant part: "On the transfer date, all MTA [police officers] who elect to transfer to County and who have successfully passed the [sheriff department's] personnel review process shall transfer to County without any change in rank or loss in salary . . . . [¶] For sworn personnel who have not passed the [sheriff department's] personnel review process, the parties shall meet and reach mutual agreement *on the placement of such personnel*." (Italics added.)

Herman contends the latter provision of section 2.1(A) entitles him to employment with the MTA or a department of the County other than the sheriff's department in a job comparable in pay to his former position as an MTA police officer.

The County maintains section 2.1(A) of the contract does not entitle Herman to employment with the County or the MTA for three reasons. The language providing "the parties shall meet and reach mutual agreement" on the placement of former MTA police officers "leaves an essential element [of the contract] undetermined" and therefore "the contract is void." This language is also unenforceable because it purports to obligate the County "to employ another in personal service."[1] Finally, even if section 2.1(A) is enforceable it does not require former MTA police officers who do not meet the sheriff's standards be hired by the MTA or the County in some other capacity—it only requires the parties to "agree[] on the placement of such personnel." An agreement *not* to place an officer in employment is an "agreement on the placement" of such officer. We reject the County's arguments.[2]

### A. *The Parties' Promise to Reach Mutual Agreement on the Placement of Certain Former MTA Police Officers Does Not Void the Contract.*

■ Although the County is willing to jettison its five-year-old law enforcement contract with the MTA to avoid possibly having to give a job to one former MTA employee, the language of section 2.1(A) does not void the contract.

---

[1] Civil Code section 3390, subdivision 2.

[2] We can quickly dispose of two arguments. We dismiss the County's argument Herman's writ petition seeks to compel a discretionary act by the County. Herman only seeks to compel the County to meet with the MTA and agree on a job for him in conformity with the transfer contract. He is not seeking to control the County's or the MTA's discretion in selecting the job to give him. We also reject Herman's argument that as a third party beneficiary of the transfer contract he is entitled to participate in any meeting between the MTA and the County concerning his job placement.

"It is still the general rule that where any of the essential elements of a promise are reserved for the future agreement of both parties, no legal obligation arises 'until such future agreement is made.' "[3] This rule might apply if the County and the MTA had reserved for future agreement the question of what to do with former MTA police officers who did not pass the sheriff's personnel review process and therefore were not given jobs as deputy sheriffs. The parties did make provision for this contingency, however, by agreeing that if an MTA officer was not hired by the County as a deputy sheriff the parties would meet and reach a mutual agreement on the placement of such a person in some other employment.

There is nothing unlawful or even unusual about contracting parties agreeing to cross certain bridges when they are reached.[4] Moreover, the parties agreed that if they could not reach accord on the placement of a former MTA officer after a good faith effort to resolve the dispute they would submit the matter to mediation.

We do not see how the parties could have made their contract more definite since at the time they drafted it they had no way of knowing which MTA officers, if any, would fail the sheriff's screening process and what jobs might be available and appropriate for that person.

Accordingly, we hold the contract is not void for failure to reach agreement on an essential term.[5]

B. *Section 2 Does Not Create an Unenforceable Obligation to Employ a Person in Personal Service.*

██ The County next offers the dubious argument the contract provisions providing for the transfer of MTA officers to the sheriff's department or to other employment are unenforceable under Civil Code section 3390. That section states: "The following obligations cannot be specifically enforced: [¶] . . . [¶] 2. An obligation to employ another in personal service."

This statute codifies a common law rule which developed in an age when a major employer employed at most a handful of workers. The courts of the time were hesitant to order specific performance by either party to an employment contract because of the friction and social costs which often

---

[3] *Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1256 [117 Cal.Rptr.2d 875].

[4] See Palay, *A Contract Does Not a Contract Make* (1985) 1985 Wis. L.Rev. 561, 562.

[5] Compare *Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562-1563 [260 Cal.Rptr. 237].

resulted when an employer and employee were forcibly reunited in a relationship which had already failed.[6] In the modern age of large corporations which employ thousands of workers, and in which you are nobody unless you have merged with or acquired somebody else, employees' retention and transfer rights are a critical element in a merger or acquisition deal.[7] It is easy to foresee the chaos which would result from a holding that, at least under California law, agreements between acquiring and acquired companies on the retention and transfer rights of the acquired companies' employees are unenforceable.

In any event, we conclude the common law rule codified in Civil Code section 3390, subdivision 2 is not applicable to the contract at issue here. The contract does not call for the personal services of any particular person. It is analogous to a collective bargaining agreement which, by statute, may be enforced against a successor employer.[8] Furthermore, under the terms of section 2.1(A) a former MTA officer, such as Herman, will not be employed by the employer (the sheriff's department) which previously rejected him, thus avoiding the threat to "harmony and . . . spirit of co-operation" assigned as the reason for the common law rule.[9]

For these reasons we find no merit in the County's reliance on Civil Code section 3390, subdivision 2.

C. *The Only Reasonable Construction of Section 2.1(A) Is That It Entitles Herman to Employment with the MTA or the County.*

█ Repeating the relevant portion of section 2.1(A), it provides: "On the transfer date, all MTA [police officers] who elect to transfer to County and who have successfully passed the [sheriff department's] personnel review process shall transfer to County without any change in rank or loss in salary . . . . [¶] For sworn personnel who have not passed the [sheriff department's] personnel review process, the parties shall meet and reach mutual agreement on the placement of such personnel."

We see no ambiguity in this contract term. Those former MTA officers who pass the sheriff department's personnel review process shall be hired as

---

[6] See *Barndt v. County of Los Angeles* (1989) 211 Cal.App.3d 397, 404 [259 Cal.Rptr. 372].

[7] See, e.g., Blassberg, Asset Purchase Agreement (1996) 947 Practising Law Institute, Corporate Law and Practice Course Handbook Series, Acquiring or Selling the Privately Held Company 121, 190 and footnote 74.

[8] Labor Code sections 1126, 1127.

[9] *Poultry Producers etc. v. Barlow* (1922) 189 Cal. 278, 288-289 [208 P. 93].

deputy sheriffs at the same rank and no less salary than they had under the MTA. Those former MTA officers who do not pass the sheriff department's personnel review process shall be hired by the MTA or by the County in some capacity mutually agreed upon by the two agencies.

There is no merit to the County's argument an "agreement on the placement" of a former MTA officer includes an agreement not to place the officer at all. This interpretation not only contorts the language of the contract it is contrary to the clear intent of the parties as expressed in section 2.1 as a whole. That section is entitled "Transfer of Personnel to County." It covers not only the transfer of "sworn personnel," (police officers) but "civilian personnel," "reserve officers," and "retirees." It was plainly the intent of the parties to make sure no employee of the MTA's police department would be left jobless as a result of the County's providing law enforcement services for the MTA.

The County maintains it is "inconceivable" it would have bound itself to hiring every MTA officer who did not pass the sheriff department's screening process. This would commit it to hiring convicted felons, employees who lied on their job applications, undocumented aliens and the like. We are not impressed with this in terrorem argument. The record does not contain any evidence of the County's employment standards for jobs other than deputy sheriff. Assuming, however, convicted felons are ineligible for employment by the County generally the County has not shown convicted felons were eligible for employment as MTA police officers. Assuming still further an otherwise unemployable MTA police officer was inadvertently accepted into County employment the County would be free to apply the same termination policy to that person it applies to any other County employee.[10]

For the all of the reasons stated above, we conclude the trial court erred in denying Herman's petition for a writ of mandate.

## DISPOSITION

The judgment denying the petition for a writ of mandate is reversed. The cause is remanded to the trial court which shall issue a writ of mandate

---

[10]According to the County, only 10 MTA police officers failed to pass the sheriff department's personnel review process. It would not be overly burdensome on the County to screen these individuals according to its general personnel policies. Furthermore, if these individuals failed to meet County employment standards the County and the MTA could agree the MTA would retain them as its employees.

directed to the County of Los Angeles ordering the County to meet and confer and reach agreement with the Metropolitan Transit Authority, consistent with the law enforcement services contract, on the placement of petitioner in a job with the County or the MTA. Petitioner is awarded costs on appeal.

Lillie, P. J., and Perluss, J., concurred.