L. Oscar Beck, Respondent, Appellant, *v.* Fybern Holding Corporation, Appellant, Respondent.

Fourth Department, March 15, 1933.

*Alfred F. Cohen* [*Frank G. Raichle* and *J. C. Randal* of counsel], for the plaintiff.

*Morey & Schlenker* [*Arthur C. Minahan* of counsel], for the defendant.

CROSBY, J. Defendant employed plaintiff to manage a dance hall for it. A written contract between the parties provided for an employment at a salary of seventy dollars per week, plus an additional thirty dollars a week to be drawn against anticipated profits to be deducted from plaintiff's share of such profits on final settlement.

The contract further provided as follows: " 4. At the end of ten (10) weeks, if the services of the employee shall be satisfactory to the employer and shall show a profit over and above all expenses of every name and nature, then this agreement is to be extended for a further period of five (5) years, and said employee is to receive forty (40) per cent of the net profits * * *, which said net profits shall be determined by deducting from the earnings of employer all expenses of any and every nature."

A later paragraph of the contract provided as follows: " 9. If the said employee shall fail to produce profits as manager * * * the employer shall have the right, upon eight (8) weeks' written notice, to terminate this contract."

Without any other arrangements than those provided for in this contract, plaintiff managed defendant's dance hall for all but 184 weeks of the five-year period. Whether plaintiff's management produced a profit depends upon a determination of what was properly included in " all expenses of any and every nature." Plaintiff contends that the business was run at a considerable profit, defendant contends that it was operated at a large loss. The matter hinges largely upon the question whether or not it was proper for defendant to charge rent, for its building, against income.

Paragraph 6 of the contract provides as follows: " 6. The determination of said amount of such net profits as made by the employer as well as the determination, calculation and apportionment shall be final, conclusive and binding upon the employe, it being agreed that the employe shall at any time have the right to examine or cause to be examined the books or record."

It is at least doubtful that defendant would have been permitted to commit manifest injustice under the broad powers given it under

the last quoted paragraph. We need not decide that, for, on the very day that the contract was executed, defendant wrote plaintiff a letter (Exhibit 3) stating, in part: " Pursuant to our agreement which we have this day executed, wish to say that in accordance with our mutual understanding, we are placing the Arcadia Ball Room on a yearly rental of $18,000.00. * * * There will also be a fixed monthly charge of $300.00 for heat and electricity," etc. The balance of the letter states that rent shall be increased from time to time during the period of the contract, until an annual rental of $30,000 is reached. Plaintiff admits receiving this letter. As evidence that it embodied his understanding of what was included in " expenses of any and every nature," plaintiff himself testified, on direct examination, when asked if he received this letter: " Yes, sir. That was necessary, because there was no mention of rentals." From the answer, " That was necessary " we conclude that plaintiff meant that rentals were not specifically mentioned by name, but that they were included in " expenses " and that it " was necessary " to define their amount.

There can be no question that plaintiff understood that the rent on this building, which the undisputed evidence shows cost over a million dollars, was to be charged against income before any profits could be considered to be earned. In his own letter, written several months after the employment began (Exhibit 17), plaintiff, in trying to explain his failure to make a profit, wrote of unexpected expenses that he had encountered, but for which, " we would at least be operating covering our expenses, including rent, light," etc. Furthermore defendant furnished to plaintiff monthly statements, in writing, showing income and outgo in detail, and every statement shows a charge for the rent mentioned in the letter dated on the date of the contract. And every monthly statement, but one, shows a loss. It is not surprising that defendant's president wrote upon plaintiff's copy of that one statement: " This looks [blank] good. Keep up the good work." Yet respondent's counsel seizes upon this one enthusiastic remark in support of the claim that defendant's business was operated at a profit. The evidence clearly and unmistakably shows otherwise.

Such being the case, it is necessary to see what the parties did. It is clear that there was no profit made during the ten-week preliminary period of employment under the contract. Yet plaintiff continued to work, and defendant continued to pay, not forty per cent of the profits, as provided by the contract, for there were no profits, but the seventy dollars a week, and for most of the period that plaintiff worked, defendant paid the additional thirty dollars a week (an aggregate of $2,240) against anticipated profits.

Defendant argues that this conduct of the parties clearly evidences a mutual understanding of the parties to continue the experimental ten weeks' employment at the will of the parties, to be terminated at any time by either party at his election.

Plaintiff, himself, at one time entertained this theory of the case, when he wrote defendant a letter (Exhibit 8), in which, among other things, he said: "I regret very much to advise you I am compelled to resign as manager of the Arcadia Ballroom at such a time as you can replace my services." Then he proceeded to give his reasons, no where suggesting any doubt in his mind of his right to terminate the contract. No violence would be done to the plaintiff's own theory of the contract to hold that the employment was terminable at will by either party, in which case he would be entitled to nothing.

However, under paragraph 9 of the contract, quoted above, defendant had the right, at any time, to terminate the contract, because of plaintiff's failure to produce profits. Under the provision of the contract plaintiff was entitled to receive eight weeks' notice. Written notice was given of a discharge effective immediately. This obligated defendant to pay plaintiff's wages for a period of eight weeks. That this was defendant's only obligation plaintiff clearly understood, for immediately upon receiving notice of discharge he wrote a letter (Exhibit A) in which he indicates his understanding that he is being discharged under the provisions of paragraph 11, instead of 9, of the contract, and says: "I wish to acknowledge your letter of the 31st ultimo, in which you state that you desire to dispense with my services as of Saturday, Nov. 1, 1930.

"Kindly refer to our contract of Feb. 25, 1929, paragraph 11, and you will note I am to receive eight weeks salary upon cancellation of this agreement. Therefore, I wish you would kindly mail me your check to this Hotel by return mail," etc.

Defendant does not concede that it owes plaintiff the eight weeks' salary, but does concede that, if it be allowed, it may be allowed at $100 a week instead of $70. And also concedes that it has no redress as to the $2,240 paid by it in anticipation of profits that did not materialize.

It is urged by the plaintiff, respondent, that defendant gave a false reason for discharging plaintiff.

"If there was * * * a sufficient reason for the discharge, even though that was not the reason assigned by defendant, or the reason which really actuated it, or even if the sufficient cause was not known to defendant when plaintiff was discharged" (*Macauley*

v. *Press Publishing Co.*, 170 App. Div. 640; affd., 222 N. Y. 696), the discharge can be justified, as it is here, by the record.

The judgment and order denying a new trial should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event, unless plaintiff shall stipulate a reduction of the verdict to $800, and interest from November 1, 1930.

The appeal from the order striking out interest previously allowed by the court should be dismissed as academic.

All concur.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff shall, within ten days, stipulate to reduce the verdict to the sum of $800 and interest thereon from November 1, 1930, as of the date of the rendition thereof, in which event the judgment is modified accordingly, and as so modified is, together with the order, affirmed, without costs of this appeal to either party. Plaintiff's appeal from order dismissed as academic in view of the determination of the appeal from the judgment.