OPINION OF THE COURT
Lawrence Newmark, J.
Motion by defendant Enzolabs, Inc. for summary judgment in its favor is denied. Summary judgment is awarded to the plaintiff, the court exercising its authority to grant such judgment to a nonmoving party pursuant to CPLR 3212 (b), and entry of judgment is stayed pending further determination of the court, as described in the following decision.
Plaintiff brings this action pursuant to Labor Law § 740, the so-called "whistleblower” law, claiming that the termination of her employment was in retaliation for her having made a complaint to the Suffolk County Department of Health. The single-count complaint alleges that defendant failed to maintain a smoke-free work area for nonsmoking employees in violation of section 1399-o of the Public Health Law and section 437-4 of the Suffolk County Code. Plaintiff seeks a judgment awarding lost wages and benefits; reinstatement to the same or an equivalent position, fringe benefits and seniority rights; injunctive relief; punitive damages; and costs, disbursements and attorney’s fees.
Plaintiff was hired by defendant in late December of 1991 to fill the position of accounts payable supervisor. Due to another employee’s absence when plaintiff commenced employment, *317 she was temporarily assigned to payroll. On or about February 20,1992, plaintiff was moved to the accounts payable area, where her desk was "around the corner and down the hall” from the employee smoking lounge. Plaintiff claims that smoke drifting from the lounge irritated her allergies; she complained to the controller, Joseph Miller, and to the vice-president of finance, Herbert Bass, asking that her work area be relocated.- Plaintiff also made her complaints known to Valerie Gibson, defendant’s human resources assistant.
When plaintiff’s supervisors refused to accommodate her request, plaintiff made inquiry of the Suffolk County Department of Health as to the law pertaining to smoking in the workplace. Upon being informed that any smoking area had to be fully enclosed, plaintiff conveyed this information to Bass and asked that the door to the smokers lounge be kept closed. Bass refused. Thereafter, on or about March 30, 1992, plaintiff made a complaint to the Department of Health, who sent an inspector to defendant’s place of business. While Gibson was escorting the inspector around the premises, he advised her that the door to the smokers lounge had to be kept closed when the lounge was in use. Gibson reported this to her boss. The inspector did not issue a summons for any violations.
On April 2 plaintiff was abruptly terminated for "poor attendance” or "excessive absenteeism” during her three-month probationary period.
In moving for summary judgment, defendant maintains that plaintiff’s allegations do not make out a claim under section 740 because (1) the statute is not designed to protect an individual employee’s health or safety, and (2) there is no proof that defendant violated any law. Defendant also contends that plaintiff gave false information on her employment application and therefore is barred from recovering damages.
As far as is relevant to this action, Labor Law § 740 (2) (a) creates a statutory remedy for employees fired or otherwise penalized for having reported to a public body a legal violation which "creates and presents a substantial and specific danger to the public health or safety.” According to Richard A. Givens, the author of an extensive commentary (Practice Commentaries, McKinney’s Cons Laws of NY, Book 30, Labor Law § 740, at 545-596), the statute was enacted to encourage workers to report health or safety hazards to supervisors and then, if no action is taken, to public authorities. It applies to *318 any "activity, policy or practice” of the employer that is in violation of "any duly enacted statute or ordinance or any rule or regulation promulgated” by any Federal, State or local authority (Labor Law § 740 [1] [c]).
Defendant takes the position that the statute does not apply unless the unsafe practice or condition poses a threat to the "public at large.” Of the few reported cases under the statute, there are two in which the Court apparently interpreted "public health or safety” to mean the "public at large”; however, the cases are distinguishable from the one at bar. In Easterson v Long Is. Jewish Med. Ctr. (156 AD2d 636 [2d Dept 1989]), the discharged employee had refused to comply with a supervisor’s request for another employee’s confidential medical record. The Court found the statute inapplicable because the "alleged wrongdoing did not threaten the health or safety of the public-at-large” (156 AD2d, at 637). In the second case the alleged wrongdoing consisted of neglect of a patient and attempts to "cover up” the incident; the Court stated that although this "may have presented a danger to * * * the individual patient * * * [it] did not threaten the health or safety of the public at large” (Kern v DePaul Mental Health Servs., 152 AD2d 957, 957-958 [4th Dept 1989]). The common and distinguishing factor in the two cases is that the discharged employee reported a single incident of wrongdoing which, because of the nature of the act, could not have had an effect on other individuals and therefore did not create or present a danger to the public.
Focusing on the statutory language, "substantial and specific danger to the public health or safety,” defendant next contends that the statute was meant to apply only to such dangers as "those posed by the pesticide plant at Bhopal or the accident at Three Mile Island.” Here, too, defendant is mistaken, having extrapolated from Givens’ mention of these two incidents as a type of risk to the public health and safety that can be reduced if the statute works as intended (Givens, Practice Commentaries, op. cit., at 546; other examples of dangers of far less magnitude are given at 555: use of a crane with a crack in its arm, failure to inspect an elevator, and corruption of those responsible for safety inspections). Moreover, in the Supplementary Practice Commentaries on section 740, Givens makes the following statements: "there is no requirement that there be * * * a large-scale threat, or multiple potential * * * victims” (emphasis in original); "health or safety is sufficiently important that a threat to any member of *319 the public might well be deemed sufficient” (to trigger application of the statute); and "anything causing risks to workers, obviously a part of the public, can also constitute a legal infraction” making section 740 applicable (id., 1993 Pocket Part, at 67-68).
In this action plaintiff claims that defendant violated both State and county laws regulating smoking in the workplace. Public Health Law § 1399-o is part of legislation establishing a comprehensive plan regulating smoking in public areas (L 1989, ch 244). Section 1 of Laws of 1989 (ch 244) declares that "the purpose of this act is to preserve and improve the health, comfort and environment of the people of this state by limiting exposure to tobacco smoke.” The Legislature acted because it found "that there is a substantial body of scientific research showing that breathing secondhand smoke is a significant health hazard for nonsmokers” (id.; emphasis added; see, Fagan v Axelrod, 146 Misc 2d 286 [Sup Ct, Albany County 1990], upholding constitutionality of the act). Chapter 437 of the Suffolk County Code is even more comprehensive in its limitations on smoking within the County. The legislative intent and purpose are based upon the Legislature’s finding that "the effects of secondary and tertiary smoke generated by the smoking of cigars, cigarettes, pipes and similar articles poses a threat to the health, safety and well-being of the citizens of Suffolk County who do not smoke” (§ 437-1A; emphasis added).
Whatever one’s personal belief may be as to the adequacy of the scientific studies on the effects of secondary smoke, the State and Suffolk County Legislatures were convinced of the need to take measures to protect nonsmokers from exposure to cigarette smoke in public places. Office employees are a part of the public and it matters not that plaintiff was the only employee of defendant who made complaints about the smoke in the work area. For this court to hold that the violation complained of did not create and present a substantial and specific danger to public health would be completely inconsistent with the intent and purpose of the State and local laws. Moreover, the fact that no enforcement action was taken against defendant as a result of plaintiff’s report has no bearing on whether her dismissal is remediable under Labor Law § 740 (Givens, Practice Commentaries, op. cit., at 550-551).
A final element to a valid claim under the whistleblower law remains to be determined, that is, whether plaintiff’s *320 dismissal occurred because of the disclosure to a public authority or was independently justified. As stated above, the explanation given by defendant at the time of discharging plaintiff was her "excessive absenteeism.”
Miller and Bass, plaintiff’s superiors, were questioned about plaintiff’s absences at their depositions; neither knew the total number of days that plaintiff had been absent during the three months of her employment. Miller remembered that plaintiff had hurt her back in mid-February and was out for 2 Vi days, and another "two to three days” the following week because her back still bothered her. Both men recalled that plaintiff had been absent one day in March because of snow. Thus at most plaintiff had missed a total of six days of work. Neither Miller nor Bass had given plaintiff any warning, verbal or written, that her absences were becoming a problem.
Relevant to this matter is the deposition testimony of Valerie Gibson, who was asked about company policy regarding employee absences. She stated that termination for absenteeism "was supposed to be [normal procedure] but it never seemed to be done.” She further stated that some employees had been absent more than 10 days a year and had not been terminated.
The above evidence suggests that plaintiff’s attendance record was only a pretext and not the dominant reason for her dismissal. Further support for such an inference is found in Bass’s testimony about a conversation with Miller in which Bass stated that they had "to make some type of decision [regarding plaintiff’s status] based upon her continued requests to move from that area because of the smoking condition.” Moreover, any remaining validity to the proffered grounds for plaintiff’s dismissal is destroyed by the content of defendant’s reply affidavit, in which there is no mention at all of absenteeism. Instead, counsel explains that "[p]laintiff was discharged due to elimination of her position and consolidation of her job function with that of an incumbent co-worker who had greater seniority.” Apart from the fact that counsel’s affidavit is not admissible evidence because of lack of personal knowledge of the facts, this explanation flatly contradicts testimony of Bass and Miller. Both stated that plaintiff was hired to become the accounts payable supervisor and manage the entire accounting function. Both spoke of plans to consolidate defendant’s accounts payable with those of two related companies, which plaintiff would then supervise; and Miller *321 stated that the two "incumbent” supervisors were to be let go once plaintiff was trained in all functions.
Bass also testified that he discussed with plaintiff on numerous occasions, the last being toward the end of March, the important role she was to play in the company’s future. Not once did he or anyone else caution her that her conduct, be it absenteeism or complaints about smoking, could jeopardize her position in the company. The court finds that plaintiff has established a prima facie case of retaliatory action under Labor Law § 740.
The question remaining is whether plaintiff is barred from recovering damages by virtue of having given false information on her employment application. The application indicates that plaintiff was then currently employed in a "temp position” but would be available for work immediately. Defendant states that during the discovery phase of this action it learned that plaintiff had not been employed at the time of completing the application. Bass and Miller affirm that had they known of plaintiff’s lie, they would not have hired her.
The words "temp position” on the application are written next to the question, "May we contact your present employer?” At her deposition plaintiff explained that she was employed as a temporary worker but at that time was not filling any particular position, and therefore, there was no "present employer” to contact.
At the outset the court notes that defendant failed to include a copy of its answer in these motion papers and has not claimed that it amended the answer to assert this defense. Summary judgment should not be granted on the basis of grounds not pleaded (Cohen v Adler, 128 AD2d 749 [2d Dept 1987]). Moreover, defendant’s argument on this point appears to be an amalgam of two distinct concepts. Though it need not do so, in the interest of judicial economy the court will address the merits of the argument.
According to the defendant, "after-acquired evidence” of a discharged employee’s "pre-hire deceit” is a complete defense to a wrongful discharge claim. There is a dearth of New York law on the topic, but the courts appear to recognize a general principle that an employer may defend a wrongful discharge claim on the basis of facts unknown at the time of the termination. For example: if "good reason for [the] discharge * * * actually existed at the time of discharge, although it
*322 was then unknown to the employer * * * the employer may avail himself of such * * * in defense of’ the action (Hutchinson v Washburn, 80 App Div 367 [2d Dept 1903]). " 'If there was * * * a sufficient reason for the discharge, even though that was not the reason assigned * * * or the reason which really actuated it, or even if the sufficient cause was not known to defendant when plaintiff was discharged’ * * * the discharge can be justified” (Beck v Fybern Holding Corp., 238 App Div 25, 28-29 [4th Dept 1933]). However, the pertinent rule regarding "dishonesty of the servant,” stated long ago, is that to bar recovery the employee’s act must be "misconduct and unfaithfulness which substantially violate * * * the contract of service” (Turner v Kouwenhoven, 100 NY 115, 120 [1885]; see also, Sundland v Korfund Co., 260 App Div 80 [1st Dept 1940]). In other words, an employer has a complete defense only when it can prove " '[flagrant acts of dishonesty * * * which seriously affect the master’s interest, continued during the service’ ” (Pictorial Films v Salzburg, 106 NYS2d 626, 630 [Sup Ct, NY County 1951]; emphasis in original).
The precise issue is whether under New York law an employer has a complete defense to an employee’s claim of wrongful (or retaliatory) discharge based upon the employee’s false representations made at a time prior to employment. This court has been able to unearth only two cases on the matter. The earlier one stands for the proposition that evidence that the employment was induced by misrepresentations is admissible on the question of the wrongfulness of the discharge (Kurlan v Gutman, 90 Misc 14 [1st Dept 1915]). In the more recent case, the employer was found justified in discharging the employee, though the discharge was for unrelated reasons, where the fact misrepresented was a material one and defendant relied upon the representation in making the hiring decision (Robitzek v Reliance Intercontinental Corp., 7 AD2d 407 [1st Dept 1959], affd 7 NY2d 1041).
The "FEP” cases submitted by defendant (actions against employers for discrimination based on race, age, etc.) do not support its argument. Although some involve false information in a resume or employment application, the cases speak of material misrepresentations of prior employment and experience as barring recovery (Livingston v Sorg Print. Co., SD NY 1989;[1] Wideberg v Tiffany & Co., Sup Ct, Westchester *323 County 1992).[2] Interpreting Michigan law, one court defined "material” as being information directly related to measuring the candidate’s qualifications and relied upon by defendant in making the hiring decision (Johnson v Honeywell Information Sys., 955 F2d 409 [6th Cir 1992]). Finally, the case which best articulated the doctrine espoused by defendant was a case of employee misconduct during employment. The court stated that to rely on the after-acquired evidence doctrine as a complete defense, the employer must prove that, had it known of the misconduct, it would have terminated employment (McKennon v Nashville Banner Publ. Co., 797 F Supp 604 [MD Tenn 1992]). (Another court stated that the appropriate question in an action involving an employee who lied on the application and was later discharged for unrelated reasons is whether the employer would have discharged the employee on discovering the misrepresentation, not whether it would have hired had it known the truth. Washington v Lake County, 969 F2d 250 [7th Cir 1992].)
To the extent the above reflects New York law, the court finds that the misinformation supplied by plaintiff on the application was not material, was not made to induce employment, and was not relied upon by defendant in hiring her. In this regard both Bass and Miller testified that plaintiff’s references had been checked and found to be more than adequate; Bass was impressed by her background. Therefore, the proffered defense will not defeat plaintiffs claim or bar recovery. Accordingly, the court must fashion a fair and just remedy.
Labor Law § 740 (5) sets forth the relief that may be awarded to an employee for an employer’s violation of the statute as follows:
(a) an injunction to restrain continued violation of this section;
(b) the reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position;
(c) the reinstatement of full fringe benefits and seniority rights;
(d) the compensation for lost wages, benefits and other remuneration; and
(e) the payment by the employer of reasonable costs, disbursements, and attorney’s fees.
*324 As stated previously, plaintiff herein seeks all of the forms of relief provided for, as well as punitive damages; however, plaintiffs submissions are lacking the kind of information necessary to enable the court to arrive at an appropriate determination. As to punitive damages, inasmuch as the Legislature did not include them as a measure of relief, the court finds that punitive damages should not be awarded. The Court of Appeals has held, in a related context, that where the Legislature created a new statutory cause of action not previously cognizable at common law, one looks to the statute to determine whether punitive damages are permissible (see, Thoreson v Penthouse Intl., 80 NY2d 490 [1992]; see also, Kraus v New Rochelle Hosp. Med. Ctr., NYLJ, July 29, 1993, at 27, col 4 [Sup Ct, Westchester County]). Plaintiffs award shall include costs, disbursements and reasonable attorney’s fees.
In considering reinstatement, the court must consider whether a harmonious working relationship can be established if plaintiff is restored to her former position or an equivalent one. Little would be gained by reinstatement if acrimony and hard feelings would prevail. As for an injunction barring defendant from continued violation of the health laws, the court must bear in mind that neither the State nor County Legislature intended to impose an unreasonable burden on employers in enacting the laws. Public Health Law § 1399-o (6) (h) specifically states that an employer "shall not be required to make any expenditure or structural changes to create a smoke-free work area.” It does require, however, that the employer use "its best efforts” to comply with an employee’s request for a smoke-free work area. The regulation in the County Code is more far-reaching in this regard; section 437-4 (A) (3) states: "In any dispute arising as to the scope and applicability of the term 'smoking area,’ if the employer is unable to accommodate the reasonable interests of the nonsmoker in an economically practicable manner, then the employer shall designate the entire office workplace as a nonsmoking area” (emphasis added). The same section and subdivision (A) (4) also speak of resolving such disputes in a manner consistent with and governed by "the rule of reason and the economic practicability of action by the employer.”
Hence while the plaintiff is entitled to statutory relief, the court desires to hear from both parties with respect to the concerns expressed above before fashioning an award. In addition, specific information with regard to wages and other *325 benefits is required. Accordingly, the matter is referred to Hon. George J. Balbach, residing at 34-05 80th Street, Jackson Heights, New York, 11372, as Referee, to hear and report as soon as practicable.

. 49 Fair Empl Frac Cas 1417; not reported in F Supp.

. 60 Fair Empl Frac Cas 843; not reported in NYS2d.